### JOHN B. LOVINGSTON ET AL.
### v.
### ADAM BAUCHENS.

*Master and Servant—Negligence of Servant—Action for Injury Caused by Driver of Team—Contributory Negligence—Evidence to Show That Driver Was Acting in Defendant's Employ—Instructions—Damages.*

1. In an action brought to recover damages caused by negligent driving, *held*, 1st, that no contributory negligence on part of plaintiff was shown; 2d, that the evidence was sufficient to justify the jury in finding that the driver whose negligence caused the injury was acting, at the time thereof, in the employ of defendants.

Lovingston v. Bauchens.

2. It was not error in the case presented, for the court to instruct the jury on the part of the plaintiff, after stating the conditions of defendants' liability, that they should "assess plaintiff's damages at such sum as they believe from the evidence to be just."

[Opinion filed February 4, 1890.]

Appeal from the City Court of East St. Louis; the Hon. Benjamin H. Canby, Judge, presiding.

Mr. M. Millard, for appellants.

Mr. L. H. Hite, for appellee.

Reeves, P. J.   This action is case.   The declaration states that plaintiff was walking and leading his horse along a street in the city of East St. Louis, using ordinary care for his own safety, when a servant of the defendants carelessly drove a horse and buggy against plaintiff's horse, which caused him to jump, and jerk plaintiff upon the sidewalk, whereby he was greatly injured, etc.   The general issue was filed and a trial had, which resulted in a judgment for plaintiff for $700, to reverse which this appeal is prosecuted.

It is urged that plaintiff's own negligence materially contributed to his injury.   This we do not think is shown. When all the evidence is fairly considered, it seems to us that appellee was using the care that an ordinarily prudent person would have used under like circumstances.

Again, it is contended that the driver of the horse and buggy was not at the time of the accident, in the use of the horse and buggy, the servant of appellants.   It is conceded that this driver had been in the employ of the appellants. His chief work in their service was the collection of rents for them.   He was engaged in this work when the accident occurred.   But it is claimed that he had no authority from them to use their horse and buggy at this time.   Mr. Lovington says: "The boy (driver) was employed to collect rents. He had nothing to do with the horse and buggy; sometimes he rode with me, going down town; occasionally we let him

have the horse and buggy to go home on Sunday. He had no right to take it in the collection of rents. I don't know anything about his having it on the day of the injury; it was without my knowledge or consent; he could not use the horse and buggy without our express permission. I sent him once with the horse and buggy to Brooklyn on business. I remember once my wife sent him with it to get some tubs. There was no objection to his driving it if we knew he wanted it for some purpose. I never had occasion to complain of his taking it against orders." Mrs. Lovington: "I was not at home the day of the accident, and knew nothing about his taking the horse and buggy. He (driver) was employed to collect our rents. It was not our intention to give him a horse and buggy to ride around in. Sometimes he drove the buggy. Such a thing might happen that he would take it out and we not know it. I am certain I did not tell him to take the horse out on this day." She was asked, "You said sometimes he took it collecting rents. There was no objection to that." Ans. "No objection to take it, probably a little, if hitched up at the door." Q. "When collecting rents?" Ans. "Yes, collecting rents; that was the time."

The driver testified: "I did not always take a horse and buggy to collect rents, nor whenever I wanted it; they would tell me to take it when I was to have it. I never took the horse and buggy unless they told me. I was eighteen years old at the time of the accident. I have taken the horse and buggy that way before. They told me if I wanted to take the buggy, some days they were not using it. I think Mrs. Lovington was at home the day of the accident. I was living with them at that time. I think she saw me go out with the horse and buggy that day. I was going to collect some rents on the island." The conclusion which the jury was authorized to draw from this evidence was that the driver was in the employ of appellants; at the time of the accident he was engaged in the service for which he was employed; that he used the horse and buggy occasionally in his collecting trips, sometimes by their permission, sometimes without specific permission, but without objection. Under this state of

Lovingston v. Bauchens.

facts, we hold the appellants were liable for the driver's carelessness which resulted in the injury to appellee. The damages, under the facts shown by the evidence, are not excessive.

The criticism of appellee's instruction is without substantial foundation. The instruction tells the jury that if the boy had used the buggy in collecting rents before the day of the accident without objection, and on the day of the injury took it with or without defendant's knowledge, but without objection, and carelessly drove against plaintiff's horse, and thus, without plaintiff's fault, caused his injury, the jury must find defendants guilty, and assess plaintiff's damages at such sum as they believe, from the evidence, to be just. While some of the terms used in this instruction are not the most apt or accurate to express the direction to the jury, plainly intended, the substance of the instruction is not erroneous. The last clause of the instruction is not like that condemned in James v. Johnson, 12 Ill. App. 286, and in Waldron v. Mercier, 82 Ill. 550. In those cases the direction was to assess such damages as the jury thought the plaintiff was entitled to receive, without limiting them to such as were shown by the evidence. We see no substantial difference between saying to the jury to give such damages as the evidence shows the plaintiff has sustained and to give such damages as the jury believe from the evidence to be just. How a jury could find from the evidence that a certain amount of damages were just to be allowed by them when the evidence failed to show that such an amount of damages had been sustained by plaintiff, we can not understand.

Finding no substantial error in the record, the judgment of the City Court is affirmed.

*Judgment affirmed.*