(No. 5530.  Decided July 21, 1905.)

FRANK DUMONTIER *et al., Respondents,* v. STETSON & POST MILL COMPANY, *Appellant.*[1]

NEW TRIAL — NEWLY DISCOVERED EVIDENCE — ABSENT WITNESS — AFFIDAVIT OF — DISCRETION. The affidavit of the witness, or good cause for its nonproduction, being required by Bal. Code, § 5076, it is not an abuse of discretion to refuse a new trial on the ground of newly discovered evidence, where the witness lived in Spokane and his affidavit was not produced, after twenty days continuance of the motion, and where the appellant knew of his whereabouts during all said time and merely affirms that the witness was (now) temporarily absent from his place of business and that he had been unable to procure his affidavit after making every effort to do so.

SAME — ABSENCE OF WITNESS — REQUEST FOR CONTINUANCE. It is not an abuse of discretion to refuse a new trial for newly discovered evidence, where the existence of a material witness, who could not be found, was at all times known, and his residence was discovered before the close of the trial, but not in time to produce him, and the appellant did not seek a continuance on account of the absence of the witness or ask any postponement of the trial for the purpose of producing the evidence.

MASTER AND SERVANT — LIABILITY TO THIRD PERSONS — NEGLIGENCE OF SERVANT — UNLOADING LUMBER — EVIDENCE OF NEGLIGENCE — QUESTION FOR JURY. In an action for personal injuries sustained through the

[1]Reported in 81 Pac. 693.

fall down a hill of a load of lumber, being delivered by the defendant's teamster to the plaintiff, at the edge of a steep bluff, there is sufficient evidence to sustain a verdict for the plaintiff, where it appears that the wagon was so constructed that the entire load could be unloaded at one time, that the teamster had commenced to unload by throwing pieces down the hill, that plaintiff, after giving directions as to the manner of unloading, went down the hill to straighten boards thrown down, and while there with notice to the teamster, the entire load was unloaded at once, and slipped down the hill, striking the plaintiff and causing the injury, and where the jury inspected the premises, and the hill was not so steep but that persons could walk up or down, and were in the habit of doing so; and the questions of negligence and contributory negligence are for the jury.

SAME—LIABILITY OF MASTER TO THIRD PERSONS. Defendant, who sold a load of lumber to the plaintiff, is liable for personal injuries sustained by the plaintiff through the negligent acts of the defendant's servant in unloading the lumber.

Appeal from a judgment of the superior court for King county, Griffin, J., entered January 9, 1905, upon the verdict of a jury rendered in favor of the plaintiffs, for personal injuries sustained through the fall of a load of lumber, delivered by defendant to plaintiffs. Affirmed.

*Kerr & McCord,* for appellant.

*Vince H. Faben* and *Martin J. Lund,* for respondents.

HADLEY, J.—This is an action for damages for personal injuries received by the plaintiff Mary Dumontier. The plaintiffs are husband and wife. Their amended complaint avers, that on August 13, 1903, said Mary Dumontier purchased from the defendant, at its mill in the city of Seattle, one wagon load of lumber, to be delivered and unloaded by the defendant at the plaintiffs' home, on Beacon hill, near Fourteenth avenue south and Walker street, in said city; that on the following day said load of lumber was brought to plaintiffs' home on defendant's wagon, hauled by defendant's team, and in charge of one of defendant's teamsters, whose name is to plaintiffs unknown; that plaintiffs' home is situated upon a sidehill, on rising and steep ground;

that, after plaintiffs had paid for the lumber, defendant's teamster commenced to unload it in such manner that Mary Dumontier believed it would slide down the hill and be broken, and she requested him not to unload it in that manner; that, before she made said request, the teamster had thrown two boards so that they had slidden down the hill; that, after the plaintiff had made said request, she went down the hill to pick up the boards so thrown; that the wagon was so constructed that the entire load could be unloaded at once, and while she was down the hill below the wagon, after she had picked up one of the boards, while she was in the act of picking up the second one, and while she was in full view of the teamster, the latter, knowing that she was there, carelessly and negligently unloaded the whole load of lumber at once; that the same slid down the hillside, and in its descent caught said plaintiff, knocked her down, and buried her under it, causing her great bodily injury. The nature of the injuries is set forth and damages are demanded. A general demurrer to the complaint was overruled, and the defendant answered. It is not denied that the lumber was purchased as alleged and hauled by defendant's teamster, but other material averments were denied, and contributory negligence was affirmatively pleaded. The cause was tried before a jury, and a verdict was returned for the plaintiffs in the sum of $3,500. The defendant moved for a new trial, which was denied, and judgment was rendered for the amount of the verdict, from which defendant has appealed.

Errors are assigned upon the refusal of the court to give two requested instructions. We think, in effect, the same subject-matter was covered by instructions given, and we believe it is unnecessary to discuss these assignments. No prejudice resulted to appellant from mere failure to give the instructions in the requested form.

Appellant's chief contention is that the court erred in denying its motion for a new trial. The first point urged

under this assignment is that the new trial should have been granted because of newly discovered evidence. The teamster who was in charge of the delivery wagon at the time of the accident was not present at the trial. It appears that he and the injured respondent were the only persons present at the time of the accident. In support of the motion for a new trial, the president of the appellant corporation made affidavit that the teamster, if present, would testify to facts materially different from the testimony of the injured respondent; that the teamster left the employ of appellant within a few days after the accident occurred; that the suit was not commenced until nearly a year after the accident, and the appellant, knowing nothing of the family or former residence of the teamster, and not anticipating that any action would be brought, made no effort at the time to keep informed as to his whereabouts; that, after the commencement of the action, and until the time of the trial, the appellant sought to find him, but could get no trace of him; that at the time of the trial appellant was unable to state that there was any probability of procuring the testimony of this witness, for the reason that it was impossible at that time to find any trace of him for the purpose of procuring his testimony; that since the trial appellant has learned that the witness resides in Spokane, and that he is now temporarily absent from his place of business, but that appellant can procure his testimony, if a new trial shall be granted. The affidavit further states that, during the trial of the case and after the testimony was all taken, a former friend of the teamster informed appellant that the teamster resides in Spokane; that appellant has been making every effort to procure his affidavit, and will be able to procure his testimony at a subsequent trial, provided the same shall be reassigned for a period not later than thirty days hence.

Upon filing the motion for new trial, the court granted twenty days for the purpose of procuring affidavits. The affidavit of this witness residing in Spokane was not pro-

cured.  Bal. Code, § 5076, requires that the affidavit of the witness, showing what his testimony will be, shall be produced, or good reasons shown for its nonproduction.  The affidavit of the president of the appellant company above mentioned was verified just twenty days after the filing of the motion for new trial.  It states that the witness was then temporarily absent from Spokane, but does not state that he was so absent during the entire time of the preceding twenty days.  Inasmuch as it appeared that appellant was advised of the witness' location before the close of the trial, the trial court may have considered that, under the circumstances, good cause was not shown for the nonproduction of the witness' affidavit.  Such questions arising upon motion for new trial are addressed to the sound discretion of the trial court, and in the absence of abuse of such discretion an appellate court will not interfere.  *Wait v. Robertson Mtg. Co.,* 37 Wash. 282, 79 Pac. 926.

Moreover the testimony of this witness cannot well be called newly discovered evidence.  The existence of the witness, and his presence at the time of the accident, were known to appellant both before and during the trial.  The essence of appellant's contention seems to be based rather upon the absence of a witness whose testimony was known than upon the ground of newly discovered evidence.  *State v. Lamothe,* 37 La. Ann. 43.  No delay or request for continuance was asked at the time of the trial because of the absence of this witness.  True, the president's affidavit states that such request was not made for the reason that appellant could not state the probability of procuring the testimony at another time, because it had been unable to find the location of the witness.  While this was true at the beginning of the trial, yet before its close appellant had discovered the residing place of the witness.

"The testimony upon which a new trial is asked must have been discovered since the trial.  If the testimony was discovered before the close of the trial, and even after argu-

ment, but before submission to the jury, it will not constitute newly discovered evidence, since the applicant could have informed the court and offered such testimony at that time, or, if the witnesses were not at hand, could have obtained a continuance." 14 Ency. Plead. & Prac., p. 796. See, also, *Bailey, Wood & Co. v. Landingham,* 52 Iowa 415.

In *Hendrickson v. Tracy,* 53 Minn. 404, 55 N. W. 622, it was held that an appplication for a new trial will not be granted when the testimony is known at the time of the trial, and no postponement is sought to enable the party desiring the testimony to ascertain the whereabouts of the witness and procure his testimony.

"If he desired the hearing postponed, in order to procure absent witnesses, as is claimed in his brief, he should have made a showing to the court, by affidavit or other testimony, stating the names of the absent witnesses, what they would testify to if present, and the efforts used to procure their attendance. A party cannot wait until after trial and verdict, and then, for the first time, complain that he went to trial without his witnesses being present, when he was aware of their absence before the trial commenced." *Van Etten v. Butt,* 32 Neb. 285, 49 N. W. 365.

In *Sharp v. Greene,* 22 Wash. 677, 62 Pac. 147, this court said:

"A new trial for reasons not authorized by law is an injury and loss to the party who has prevailed in the first trial; also, the public good requires that there be an end to litigation. It is a maxim of the law that a man shall not be twice vexed for one and the same cause."

We do not find that the court abused its discretion in denying the motion for new trial on the ground above discussed.

Another reason assigned why the motion for new trial should have been granted is that the evidence was insufficient to justify the verdict. This contention also involves contributory negligence. It is argued that the hill was almost perpendicular, and that it was a physical impossibility for the respondent to have walked down and picked up the

pieces of lumber, as she testified. It is also contended that her evidence showed that, at the time she stepped over the bluff, the teamster had started to the heads of his horses for the purpose of backing the rear end of his wagon to the edge of the bluff, and that he was therefore not in position where he could see her, from the very nature of the contour of the ground; that she was better able to see the wagon than the teamster was able to see her, and that, if she had used her ordinary senses, she could have seen the lumber as it was being unloaded, and avoided the danger.

The jury inspected the premises, and saw the physical conditions. There was testimony that the hill was steep, but that persons could walk down or up, and that children were in the habit of running up and down the bluff. The respondent testified as follows:

"When he brung the team some of the lumber fell out, some of the lumber that was on top, and he throwed it down the hill; instead of throwing it down straight he throwed it across. And I told him I did not want the lumber to be broken up like that, to throw it down straight and he said it would go down anyway. Well, when he asked me to give him the money, and I gave him his money—I gave him his money, and told him, 'I will go down the hill and I will throw that lumber down.' And he went towards the team, and he said 'All right'; and he went towards the team; and the team was turned this way (illustrating), and after I went down the hill he changed the team. . . . No sir, he just—he said 'All right' when I said I would go down and straighten the boards, I didn't want the lumber to break up, I wanted him to throw it down straight, and he said 'All right,' and he went towards the wagon and I went right straight down to where the lumber was; and I just put one down and throwed one on one side, and I picked up another one to throw it and the lumber came down on me, and I didn't know any more."

We think it does not appear that it was physically impossible for the accident to happen as testified, and, under the evidence, the questions of negligence of the teamster and of

respondent's contributory negligence were properly for the jury to determine.  The jury must have found against contributory negligence, and that the negligence of the teamster was established.  The liability of appellant follows, and a verdict against it was authorized, for the reason that employers and masters are answerable for damages resulting from the acts of their servants committed while in the exercise of the functions of their employment and incidental thereto.  For authorities applicable to a case of this kind, see the following: *Holmes v. Tennessee Coal, Iron & R. Co.,* 49 La. Ann. 1465, 22 South. 403; *Keep v. Walsh,* 44 N. Y. Supp. 944; *Pierce v. Conners,* 20 Colo. 178, 37 Pac. 721, 46 Am. St. 279; *Ridge v. Railroad Transfer Co.,* 56 Mo. App. 133; *Lovingston v. Bauchens,* 34 Ill. App. 544.

It is urged that a new trial should have been granted because the verdict was excessive.  After an examination of the testimony as to the nature of the injuries, having in view all the testimony upon the subject and the fact that the trial court, who saw the respondent and heard all the witnesses, has, by the denial of a new trial, found that the amount is not excessive, we believe we are not justified in finding otherwise.  We therefore think it was not error to deny the motion for new trial, and the judgment is affirmed.

MOUNT, C. J., FULLERTON, CROW, RUDKIN, and DUNBAR, JJ., concur.