Gerald Dee HALEY, Appellant,

v.

BYERS TRANSPORTATION COMPANY,
Inc., and Kenneth G. Deem, Respondents.

No. 51949.

Supreme Court of Missouri,
Division No. 2.

May 8, 1967.

Thaine Q. Blumer, Blumer & Wright, Kansas City, for plaintiff-appellant.

Jack G. Beamer, McKenzie, Williams, Merrick, Beamer & Stubbs, Edward J. Houlehan, Houlehan & Waterman, Kansas City, for defendants-respondents.

EAGER, Judge.

This is a second appeal. The opinion on the first appeal appears at 394 S.W.2d 412, and many of the facts are stated there. That appeal involved primarily a construction of the jury's verdicts; the judgment for plaintiff on his petition was reversed and the cause remanded with directions. The present appeal involves specific claims of error during the same trial, after remand and the entry of a judgment for defendants. Plaintiff's prayer for damages was for $500,000.

The case arose from separate, but related, collisions between plaintiff's car and two tractor trailers. We shall state the facts briefly, referring to others in the body of the opinion as may be necessary. Plaintiff was driving east on old Highway 40 from Kansas City to the Whiteman Air Force Base at about 1:00 a.m. on August 24, 1961. He was an Airman First Class stationed at that base. The collisions occurred at a spot nearly opposite a truck stop, service station and restaurant on the south side of the road known as "Hillcrest Station" and also as "Fortyville"; this was approximately three and one-half miles east of Odessa. The road was 24.5 feet wide, of asphaltic concrete; the shoulder on the north side was narrow, since excavations had been made for Interstate 70 and there was a substantial "drop off" on that side.

Plaintiff's car struck the right rear dual wheels of the trailer of a Southwestern Freight Lines rig driven by Verlin Barnett, which was turning into the easternmost driveway of the station; the tractor was then in the driveway but the trailer was largely, if not entirely, blocking the south or eastbound lane of the road. The tractor driver's turn signals had operated continuously for 120–130 feet before he started the turn; the tractor and trailer were fully lighted with the various lights required on such equipment. There was evidence that the lights on the tractor (including the turn lights) could be seen for a distance of 500 feet to the west, although that collision occurred about 290 feet east of a crest. The station, generally speaking, occupied the crest of a rounded elevation, and there was a rather substantial decline to the east. There were lights at or around the station which lighted the area to some extent. Plaintiff's car left no skidmarks; the only estimate of its speed came from Barnett, the driver of the tractor unit already described. He testified that, from a brief glimpse, plaintiff appeared to be traveling at 80 miles an hour or more. The impact broke a tie rod on the dual wheels and caused them to swing together. The right front corner of plaintiff's car was sheared off in this collision.

During the trial of a prior suit against both freight lines, Southwestern paid plaintiff $80,000 in settlement and received releases or covenants not to sue. That suit was dismissed without prejudice as to Byers and its driver, and later the present suit was instituted.

Another tractor trailer was proceeding west behind Barnett's; this was driven by the defendant Deem for Byers Transportation Company, Inc., and the trailer was loaded with sheet steel. When plaintiff's car sustained its first impact its momentum was largely stopped, but it swung over to the left and continued to move down the

road, more or less sideways, at approximately ten miles an hour until it collided with the Byers' tractor trailer unit. The left front corner of the tractor hit the left side of plaintiff's car behind the driver, and the right front wheel of the tractor ended up in the back seat of the car. There was much controversy as to the exact point of impact on the road but this is largely immaterial to our present issues. It occurred at least 27.6 feet east of the point of the first impact, and probably considerably farther. Deem estimated that his tractor pushed the car back about 25 feet. Obviously, both the car and tractor were still moving, and concededly the car was pushed some distance westward. There was also much dispute concerning the speed of the tractor; evidence offered from the transcript of the former trial, and more or less confirmed at the last trial, indicated that it was probably traveling at 35–40 miles an hour. Deem, the driver, insisted that he had at all times maintained the statutory interval of 300 feet between his unit and that of Barnett. There was highly divergent testimony concerning the required stopping distances of defendants' tractor trailer.

The plaintiff testified, but he had no recollection of the collisions. The case was submitted on the alleged primary negligence of Deem in following the lead vehicle at a distance of less than 300 feet and in failing to slow, and on humanitarian negligence in failing to stop or slacken speed. Both defendants pleaded and submitted the issue of contributory negligence and defendant Deem, in a counterclaim, also submitted plaintiff's negligence; that negligence consisted, supposedly, of a failure to keep a lookout, excessive speed, and the failure to slacken and swerve. The jury first brought in a verdict in favor of plaintiff but assessed his damages at "zero dollars"; it found for the plaintiff on Deem's counterclaim. The jury had been instructed that the sum of $80,000 should be deducted from any amount of damages which it found, and that if such sum equalled or

exceeded the amount so found, its verdict must be for the defendants. Upon objection made to the verdict the jury was sent back to reconsider, and it returned with a verdict for plaintiff assessing his damages at $20,000. Judgment was entered for plaintiff on this latter verdict and for plaintiff on Deem's counterclaim; all parties appealed, but plaintiff thereafter dismissed his appeal. This Court held that the first verdict was a valid and binding verdict for defendants on plaintiff's petition and ordered judgment entered thereon, although the jury had not strictly followed the instructions; the Court held further that the jury had obviously found that defendants were negligent, that it had done so before reaching the question of damages, but that it had then found that plaintiff's damages did not exceed the $80,000 previously paid; that, thus considered, the verdict was not inconsistent or self-contradictory. After judgment was entered in the trial court on our mandate, plaintiff filed a motion for a new trial as to damages only or, in the alternative, on all issues; this motion was overruled and plaintiff appealed. He does not raise here the contention that the verdict is inadequate but relies upon three specific points of error. These are: (1) error in the exclusion of movie films taken of plaintiff in his home showing his sundry activities; (2) the exclusion of the testimony of an Air Force financial officer to show the trend of Air Force pay for the past 15 years and the probable trend of plaintiff's compensation in the future; and (3) supposed error in two instructions submitting the issue of plaintiff's negligence.

There is and can be no doubt that plaintiff was most seriously injured. Despite long hospitalization he has since been paralyzed from the chest downward, and the medical evidence all indicated that this condition was permanent. As we read the record, defendants did not controvert this fact, and indeed they put on no medical evidence at all. They merely sought to show by the cross-examination of one or more

of plaintiff's medical witnesses that some such persons are able to accomplish sufficient rehabilitation to enable them to engage in gainful occupations, and that this depends largely upon the individual's incentive.

■ The first point concerns the exclusion of six reels of 16 mm. movie films taken in plaintiff's home, undoubtedly for the purpose of the trial. No representative of the defendants was present. The films were viewed by the trial court out of the presence of the jury, and the Judges of this Court have viewed them in toto. The first difficulty arises out of the failure of the transcript to show the colloquy and arguments had and made out of the presence of the jury when the films were shown, and the objections then made. However, it was conceded here in oral argument that an objection was then made by the defendants to the introduction of the films; when the parties and the Court came back on the record the Court announced that the objection to these exhibits had been sustained. Counsel for plaintiff then stated, in substance, that he wished to make an offer of proof, and the Court replied that the exhibits had been offered and that no further offer was necessary. This is understandable since the Court knew precisely what was being offered and no further explanation was necessary, and in fact the Court stated that "the exhibit speaks for itself." However, plaintiff's counsel was then allowed to state fully his reasons for the supposed materiality and necessity, and this offer was refused. We cannot presume wrong action on the part of the trial court in connection with such a matter, Nash v. Plaza Electric, Inc., Mo., 363 S.W.2d 637, and the whole context fairly indicates that specific objections were made and sustained. Everyone concerned knew precisely what was being offered in evidence and the reasons for and against the offer. We pass to a discussion of the merits of the ruling.

■ The films showed plaintiff engaged in various activities in his home, frequently with the aid of his wife; these included the difficult and laborious acts of getting from his bed into a wheelchair, getting out of it, getting into the "stand-alone," an appliance which supported him and permitted him to move in an upright position, the moving of his legs manually one at a time in order to accomplish bodily movements, this being done both with and without assistance, the taking of weight lifting exercises, and raising himself from certain places and positions by means of an overhead bar. Substantially all of these activities were described in evidence without objection. Plaintiff's counsel did not seek to produce and offer any of this equipment as exhibits, although much of it was readily movable. We conclude that the films were self-serving, being based solely upon plaintiff's actions (rather than his words), and that they would have constituted in reality testimony from plaintiff which was not subject to cross-examination. We feel, as did the trial court, that the very obvious impact of these films would have been to create a sympathy for the plaintiff out of proportion to the real relevancy of the evidence. If more detail was desired, it should have been accomplished by the production of the equipment or more detailed descriptions. One film, showing the plaintiff being manipulated in various positions in a "Stryker Frame" while in an Illinois hospital, was shown to the jury over defendants' objections; it is stated without contradiction that plaintiff was present before the jury in a wheelchair for five days. The trial court did not abuse its discretion in excluding this evidence. See generally Taylor v. Kansas City Southern Ry. Co., 364 Mo. 693, 266 S.W.2d 732. Counsel seek to distinguish that case on the ground that the demonstration there was unnecessary because the operation (laminectomy) had admittedly been performed, while here there was a disputed issue as to plaintiff's condition. We do not so read the present transcript, as we have already

indicated. In Kickham v. Carter, Mo., 314 S.W.2d 902, the Court affirmed the granting of a new trial because of the improper and prejudicial showing of photographs and a chart of a laminectomy, along with a minute description. In the latter case the Court said: "Demonstrations which dramatize plaintiff's injuries in a manner calculated to inflame the minds of the jury are prejudicial and improper." In Hampton v. Rautenstrauch, Mo., 338 S.W.2d 105, 83 A.L.R.2d 1260, relied upon by plaintiff, the court upheld the admission in evidence, without demonstration of use, of certain appliances used by plaintiff in connection with her treatment. We do not have that question presented here. See also Glowacki v. Holste, Mo., 295 S.W.2d 135. Plaintiff cites several cases as indicating that error in the exclusion of evidence affecting the amount of damages is presumed to be prejudicial, and that such evidence "might" also have affected the result on the merits. We are not concerned with those cases, for we hold that there was no error in the exclusion of the films. The trial court was vested with a wide discretion and it was not abused. We need not consider plaintiff's discussion of the amounts of the verdicts in cases of supposedly similar injuries. Plaintiff does not raise the question of inadequacy. Under these circumstances it is immaterial whether or not the admission of the films might or would have affected the verdict; there being no error, the jury was the final arbiter of the amount of plaintiff's damages.

■ The next point made is the supposed error in excluding certain proposed testimony from Robert L. Faucette, Superintendent of Accounting and Finance at the Richards-Gebaur Air Force Base. The witness testified that he dealt with the pay of all air force personnel (presumably in his area) and that he had brought certain records with him. He knew nothing of the plaintiff or of plaintiff's proficiency or service, nor had he brought any of plaintiff's records. He further testified: that the base pay in February, 1961, of an airman first class with plaintiff's length of service was $165, with subsistence pay of $2.57 per day, $2.34 per day for quarters if no dependents (both applicable only if living off the base), $30 per month for proficiency pay if earned, and a clothing allowance of $6.00 per month; that on October 1, 1963, that base pay was raised to $205 per month; that the maximum base pay for an airman first class would be $215. When he was asked to state from his records what the "*trend*" in Air Force pay had been over the last 10 to 15 years, an objection was made that such evidence would be speculative and this was sustained. A long colloquy ensued demonstrating that counsel wished to show that a trend of inflation had affected Air Force pay in general and then to use that testimony as a basis for expert testimony regarding the prospective pay of plaintiff in the future, until retirement; also, that there was a likelihood of further increases in plaintiff's earnings. The Court considered this as an offer of proof and denied it, stating also that counsel might argue the matter of inflation to the jury. Counsel for plaintiff then asked the witness concerning his experience in determining the "general promotion rate of airmen"; objection was made that the matter was speculative, that the test was the individual's proficiency and qualifications, and that the evidence was of no value unless the witness had some knowledge of plaintiff. That objection was sustained. Counsel was permitted to show by the witness the various grades or ranks, past and future, available to plaintiff as an enlisted man. Objection was sustained to a further question as to plaintiff's "likelihood of promotion" after advancing to his present grade; the objection was that the evidence would be speculative. A similar objection was sustained to a question asking about the probability of plaintiff's earning additional proficiency pay in electronics.

■ Counsel insist that all such evidence was improperly excluded and that this was prejudicial because it bore directly upon the loss of future earnings; also, that the re-

jection of this evidence compounded the error supposedly made in the rejection of the movie films. The issue is relatively simple. Plaintiff was allowed to show his actual pay and allowances, and what they would have been up to the date of trial had he remained in the service; he was also allowed to testify personally that he had passed a test and had qualified for proficiency pay in electronics and that he was scheduled for an immediate transfer and for further training in electronics. Anything further would rest in pure speculation, for no one can intelligently forecast the effects of the forces of inflation or the actions of Congress, nor even whether plaintiff would remain in the Air Force. Indeed, he admitted that he expected to look around after his transfer to California to see what he might find in private employment. The value of a loss of future earnings may not rest upon speculation. Seymour v. House, Mo., 305 S.W.2d 1; Honeycutt v. Wabash R. Co., Mo.App., 313 S.W.2d 214 [subsequent appeal Mo., 337 S.W.2d 50]; Burns v. Kansas City Public Service Co., Mo., 273 S.W.2d 184. It seems clear that several speculative elements were involved in the proposed testimony. There was no error in the rulings.

■ The last point assigns error in giving instructions numbered 14 and 16, the former on behalf of both defendants and the latter on behalf of Deem on his counterclaim. Both instructions submitted the issue of plaintiff's negligence; the two are very similar, but we shall confine our consideration to No. 14, because the counterclaim is in nowise involved on this appeal. The trial court initially entered a judgment for plaintiff on Deem's counterclaim, and this was reaffirmed in the judgment entered later after receipt of our mandate. We do not consider plaintiff to be aggrieved by an instruction given solely upon an issue which was found in his favor. Its supposed error is only assigned as lending additional emphasis to Instruction No. 14. This case was tried prior to the effec-

tive date of the Missouri Approved Instructions, hence the present complications.

The instruction told the jury, in essence, that: if plaintiff was traveling at a speed in excess of 65 miles an hour, if the Southwestern unit was being driven across the eastbound lane into the station driveway at 20 miles an hour, if all lights on that unit were burning, and the locale was brightly lighted by the lights of the service station, if the tractor trailer or its lights were visible for at least 400 feet to the west, and if "in the exercise of the highest degree of care the plaintiff, by keeping a lookout ahead and laterally under the circumstances described in evidence, saw or should have seen the Southwest Freight Lines tractor-trailer unit in the act of crossing the eastbound lane of the highway into the driveway and that the plaintiff could have slackened the speed of his automobile and could have swerved his automobile and avoided the collisions mentioned in evidence, which he failed to do, if you so find, * * *," and that in so doing plaintiff was negligent, etc., then plaintiff could not recover.

The complaint made of the instruction is that it omits the requirement of a finding that plaintiff, at the time, knew or should have known that there was "danger of a collision," in time to have taken preventive action. For two independent reasons the point may not be allowed. Counsel cite Miller v. Greis, Mo., 396 S.W.2d 642. That case involved an intersectional collision with the usual highly contradictory testimony. The Court said that the instruction given there assumed a duty on the part of defendant to slow, slacken or warn, whereas no such duty existed upon the "bare framework of facts" hypothesized; or, in other words, that the *facts* hypothesized there did not in themselves raise such a duty, and that a finding of an apparent danger of collision was therefore required. When that instruction is examined it is seen that it did not hypothesize facts which would, in themselves, show an imminent danger of collision. The other cases cited, Stakelback v. Neff, Mo.App., 13 S.W.2d 575; Mullen v.

St. Louis Public Service Co., Mo., 389 S.W. 2d 838, and Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, add nothing further to plaintiff's contentions on our facts and the instruction presented. In effect, those cases merely required findings that plaintiff had actual or constructive knowledge of danger. In our view, Instruction No. 14 in our case does so. It required findings: that the tractor trailer was crossing plaintiff's lane at 20 miles an hour; that the area was well lighted and the tractor and trailer were fully lighted; that plaintiff was traveling at a speed in excess of 65 miles an hour; that the tractor trailer or its lights were visible for a distance of at least 400 feet to the west (from which direction plaintiff was approaching) and that plaintiff, by keeping a lookout, *saw or should have seen* the tractor trailer and that his failure to act under those circumstances constituted negligence and caused or contributed to the collision. Whether plaintiff actually *saw* the danger in time to act, we do not know, nor is that determinative; but we are convinced that the facts hypothesized were entirely sufficient to show the existence of a very present and imminent danger to any reasonable person who, in the exercise of the highest degree of care, was keeping a proper lookout; in other words, these facts, if found, *required* that such a person *should* have seen an existing and imminent danger in time to act. The instruction here is not subject to the objections sustained in the cases cited. We hold that the giving of it was not error. For a wholly independent reason the giving of that instruction could not be reversible here. We have already indicated that the jury found for plaintiff on his petition on the question of liability. That being true, it would hardly be possible for an instruction on contributory negligence to constitute reversible error. Counsel argue that the instruction *might* have influenced the jury on the issue of damages, in that the "error" misled or confused the jury; we have held that there was no error. The contention is entirely too speculative and we do not pursue it further.

We do not reach the contention of defendants that plaintiff failed to make a submissible case on either primary negligence or humanitarian negligence.

The judgment is affirmed.

All of the Judges concur.