Dana **REPPLE**, et al., Plaintiffs–Appellants,

v.

**BARNES HOSPITAL**, et al., Defendants–Respondents.

No. 55001.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 10, 1989.

Application to Transfer Denied Nov. 14, 1989.

Gerald K. Rabushka, St. Louis, for plaintiffs-appellants.

Gerald D. Morris, St. Louis, Shepherd, Sandberg & Phoenix, Peter F. Spataro and Doreen Grahm–Powell, St. Louis, Moser, Marsalek, Carpenter, Clearly, Jaeckel & Keaney, Robert Rosenthal, St. Louis, Brown, James & Rabbitt, for defendants-respondents.

CRANDALL, Judge.

Plaintiff, Dana Repple, brought this action for medical malpractice against defendants, Barnes Hospital (Barnes) and Drs. Michael J. Gast, Lewis C. Fischbein, Dale Larson.[1] Plaintiff appeals from the trial court's entry of judgment in favor of Barnes and Dr. Larson pursuant to a directed verdict, and entry of judgment in favor of Drs. Gast and Fischbein pursuant to a jury verdict.[2] We affirm.

Plaintiff first sought treatment with Dr. Gast in connection with a pregnancy on March 19, 1982. At that time, and throughout plaintiff's treatment, Dr. Gast was a full-time employee of Washington University and a faculty member of its medical school, specializing in obstetrics and high risk pregnancies. Plaintiff's baby was delivered at Barnes on November 4, 1982.

Following delivery of her baby, plaintiff experienced a number of complications including a pain in her neck which ran down her back. Dr. Larson, a resident obstetrician and gynecologist at Barnes, diagnosed this condition as a chronic muscle problem. Dr. Gast concurred with the diagnosis and consulted defendant Dr. Fischbein, a rheumatologist specializing in muscle joint disorders. On November 8, Dr. Fischbein ex-

---

1. Other defendants were named in plaintiff's petition, but were dismissed prior to trial.

2. Plaintiff's husband also brought a derivative claim for medical expenses and loss of consortium. For the purposes of this opinion, plaintiffs will be referred to in the singular.

amined plaintiff and recommended a cervical collar and physical therapy.

By the morning of November 9, plaintiff's condition had become significantly worse. Dr. Gast finding, among other things, that plaintiff was unable to walk and was experiencing a significant loss of sensory function in her lower extremities, summoned a neurologist. After a period of observation, during which plaintiff's condition continued to deteriorate, a neurosurgeon was summoned and surgery performed. The results of the surgery revealed that plaintiff suffered from a type of vascular malformation (cavernous angioma) which had hemorrhaged. By the time of her discharge plaintiff had been diagnosed quadriplegic. By the time of trial plaintiff testified that she had regained 80% use of her right arm and 30% of her left arm.

At trial plaintiff argued that Drs. Gast, Fischbein and Larson negligently failed to timely diagnose her condition, and that a timely diagnosis would have given her a better than fifty percent chance of avoiding her present state. Plaintiff further asserts derivative liability on the part of Barnes under an agency theory.

On appeal, plaintiff first contends that the court erred in sustaining an objection to a hypothetical question posed to plaintiff's expert Dr. Howard Schwartz during a videotaped deposition taken approximately three years prior to trial. In his deposition, Dr. Schwartz expressed the following opinions:

1. Drs. Gast, Fischbein and Larson failed to timely diagnose the vascular malformation.

2. Drs. Gast, Fischbein and Larson failed to meet the standard of care.

3. Drs. Gast, Fischbein and Larson's failure to meet the standard of care caused plaintiff's present paralysis.

4. Plaintiff's paralysis is permanent.

5. A myelogram and CAT scan performed immediately after November 8, 1982 at 7:00 a.m. would have shown an abnormality.

6. If a myelogram and CAT scan had been performed and proper treatment begun immediately afterwards plaintiff's condition would be significantly better than it is at present.

7. If surgery had been performed on November 8, at 9:30 a.m. plaintiff's condition would be significantly better than it is at present.

8. Dr. Gast failed to recognize that plaintiff was suffering from a neurological disorder and a neurological consultation should have been requested before November 9.

Plaintiff concedes that the hypothetical question posed to Dr. Schwartz contained the following incorrect factual assumptions:

1. The hypothetical question stated that Doctor Gast did not visit plaintiff over the weekend of November 6 and 7 when in fact plaintiff testified that Dr. Gast did visit her over the weekend of November 6 and 7.

2. The hypothetical question stated that Dr. Gast visited plaintiff on Monday evening November 8 when, in fact, plaintiff testified that Dr. Gast visited her on Monday November 8 at 1:00 p.m. and Dr. Gast testified that he visited her between 11:00 a.m. and 12:00 p.m.

3. The hypothetical question stated that plaintiff "was now completely paralyzed from her neck down except for a small amount of limited motion in her left and right arms and hands" when in fact plaintiff testified at trial that she had regained 80% use of her right arm and 30% use of her left arm.

4. The hypothetical question stated that plaintiff's medical records indicated a history of neck pain "beginning" three years ago when in fact her medical records indicated that she had a history of neck pain "approximately" three years ago.

Plaintiff presented the live testimony of two expert witnesses who were permitted to answer and express their opinions to a hypothetical question substantially identical to that posed to Dr. Schwartz, absent the incorrect factual assumptions. After the trial court sustained an objection to Dr. Schwartz's opinions given at his deposition,

plaintiff did not call Dr. Schwartz as a live witness nor did she attempt to qualify the opinions of Dr. Schwartz through the testimony of her other experts.

When an expert is asked to assume certain facts as true in order to answer a hypothetical question, those facts must be established by the evidence.[3] *Franklin v. Mercantile Trust Co.*, 650 S.W.2d 644, 649 (Mo.App.1983). "An expert opinion (other than one stated on cross-examination) based in part or whole upon hypothesized facts may not be based upon facts or data not of record...." Mo. Evidence Restated, Section 703 (Mo.Bar 1984). The sufficiency of a hypothetical question is addressed to the sound discretion of the trial court. *Franklin*, 650 S.W.2d at 650.

Here, the evidence not only failed to establish certain assumptions of fact plaintiff posited in her hypothetical question, but it also admittedly contradicted them. Plaintiff argues, however, that the incorrect factual assumptions contained in her hypothetical question were not material and therefore the question should have been admitted.

When an expert is permitted to testify to medical opinions in response to a hypothetical question, it follows, as a general rule, that an expert is necessary to explain the materiality of any incorrect factual assumptions contained in that question. In the case *sub judice*, the materiality of the incorrect factual assumptions found in plaintiff's hypothetical question is itself a subject of expert testimony. The arguments of the parties regarding materiality are simply speculative. The materiality of the incorrect factual assumptions found in plaintiff's hypothetical question could have been determined best either by Dr. Schwartz, whom plaintiff did not call, or by other medical experts who testified at trial. Because we cannot say that the incorrect factual assumptions contained in plaintiff's hypothetical question were immaterial as a matter of law, we find no

abuse of discretion in the trial court's ruling. Plaintiff's first point is denied.

In her second point plaintiff alleges the trial court erred in granting the motion of Barnes for a directed verdict at the conclusion of plaintiff's case, because there was substantial evidence of an agency relationship between Barnes and Dr. Gast.

In order for liability to attach derivatively to Barnes as a principal, its purported agent, Dr. Gast, must first be found liable. *Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 920 (Mo.App.1985). Because we affirm the judgment in favor of Dr. Gast, the issue of Barnes' liability as a principal is moot. Plaintiff's second point is denied.

Plaintiff next contends that the trial court abused its discretion in refusing to admit into evidence a ten minute videotaped representation of a "Day–In–The–Life" of plaintiff.

The issue presented in admitting or rejecting a "Day–In–The–Life" videotape is whether it is practical, instructive and calculated to assist the jury in understanding the case. *Bailey v. Valtec Hydraulics Inc.*, 748 S.W.2d 805, 806 (Mo. App.1988). The trial court's ruling regarding the admissibility of such videotapes is accorded great weight and will not be disturbed on appeal absent an abuse of discretion. *Bailey*, 748 S.W.2d at 806.

In *Haley v. Byers Transportation Co.*, 414 S.W.2d 777 (Mo.1987), a film depicting a plaintiff paralyzed from the waist down engaged in various daily activities including getting from his bed into a wheelchair, getting out of a wheelchair, getting into an appliance which enabled him to move in an upright position, and raising himself from certain positions by means of an overhead bar was held to be inadmissible. The court concluded that it was self-serving, constituted testimony from plaintiff not subject to cross-examination, and created sympathy for plaintiff out of proportion to the real relevancy of the evidence. *Haley*, 414 S.W.2d at 780. Moreover, the court noted

---

**3.** For a current overview of the issues relating to the use of expert testimony in Missouri, *see* McMichael and McCarter, *Expert Testimony*, 45 JOURNAL OF THE MISSOURI BAR, 281 (1989).

that substantially all of the activities depicted in plaintiff's film were already described in evidence, and that if plaintiff desired more detail, he could have either offered the equipment, which was readily movable, as an exhibit or provided more detailed descriptions. *Id.*

In *Lawton v. Jewish Hospital of St. Louis,* 679 S.W.2d 370 (Mo.App.1984) this court held a "Day–In–The–Life" videotape admissible inasmuch as the nature and extent of plaintiff's injuries were facts essential to prove his claim and necessary for the jury's determination of damages. In *Lawton,* unlike the present case, plaintiff's ill health prevented him from appearing at trial. *Lawton,* 679 S.W.2d at 372.

In the instant case plaintiff appeared at trial and was able, with the aid of several appliances and medical devices, to demonstrate her daily living activities to the jury through the use of conventional testimony. We therefore find no abuse of discretion on the part of the trial court in refusing to admit plaintiff's "Day–In–The–Life" videotape. Plaintiff's third point is denied.

Plaintiff's remaining points involve discretionary rulings by the trial court. No abuse of discretion appears. An extended opinion would have no precedential value. The points are denied in accordance with Rule 84.16(b).

In view of our ruling, we do not address the contention of Dr. Fischbein that the trial court erred in denying his motion for directed verdict because plaintiff failed to make a submissible case. *Grippe v. Montazee,* 696 S.W.2d 797 (Mo. banc 1985).

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., concurs.

KAROHL, J., concurs in part and dissents in part; point III.