# CHARLES E. GORDNER, Respondent, v. ST. LOUIS SCREW CO., Appellant.

St. Louis Court of Appeals. Opinion Filed April 8, 1919.

1. **MASTER AND SERVANT:** Injuries to Third Persons: Negligence of Master Mechanic: Scope of Employment: Question for the Jury. Where a master mechanic was allowed wide discretion with respect to his movements and the performance of his duties which he deemed necessary or proper in connection with his main duties, and had authority from his master to go from one plant to another at any time, and deliver castings, using his own machine when he saw fit to do so, and before the close of working hours

on the day of plaintiff's injury he decided to return certain castings, etc., rather than send them by a messenger furnished by his master, and whilst on the way collided with a wagon, etc., it cannot be held as a matter of law that he was performing a service wholly beyond and without the scope of his employment, or not in any way pertaining thereto, and *held*, that the act was one which a jury may find to have been within the scope of the employment and impliedly authorized by the master.

2. ——: ——: ——: ——: **Evidence.** In such case, where the evidence shows prima facie, that the automobile used by the servant at the time of plaintiff's injury was being used in the furtherance of the master's business with the implied assent and authority of the master, the master is liable to respond for the negligent use thereof.

3. ——: ——: ——: ——: ——. Although the servant owned the automobile, where the evidence shows that it was habitually used in the master's business, with the knowledge and assent of the master's officers, in consideration of which the master furnished the servant gasoline and oil and did repair work thereupon, it is immaterial that no express agreement in the nature of the hiring of the machine by the master be shown; it is amply sufficient for plaintiff to show facts and circumstances from which it may be reasonably inferred that the master impliedly authorized the use thereof for such purpose as the servant might see fit to put it in the pursuit of the master's business.

4. **APPELLATE PRACTICE:** Instructions: Harmless Error. An instruction given at plaintiff's request to the effect that defendant was liable, if at the time of the collision its servant was in its employ, and with its direction, knowledge and consent was using the automobile in said company's business, though going farther than the evidence warrants, is not fatally defective, since it requires the findings mentioned in the conjunctive, and hence simply requires the finding of more than is neceessary to warrant a verdict for plaintiff.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Jourdan, Rassieur & Pierce* for appellant.

(1) A master is liable for the negligent act of the servant only when the negligent act itself is within the scope of the employment, and the fact that the servant acted voluntarily for the supposed benefit of the master

does not render the master liable. Farber v. Railroad, 32 Mo. App. 378; Snyder v. Railroad, 60 Mo. 413; Walker v. Railroad, 121 Mo. 575; Hartman v. Muehlebach, 64 Mo. App. 565; Wyllie v. Palmer, 137 N. Y. 248; Guthrie v. Holmes, 198 S. W. 854; Marion v. Railroad, 59 Iowa, 429; Healy v. Patterson, 123 Iowa, 73; Brown v. Jarvis Engineering Co., 166 Mass. 75; Wiltse v. State Road Bridge Co., 63 Mich. 639. (2) When injury results from the use of a vehicle, or other instrumentality, used by the servant and not furnished by the master, the master is liable only when the contract of employment requires the servant to use such instrumentality in the service of the master, or where the nature of the servant's duties under the employment is such that the use of such instrumentality is necessary to its proper performance. 6 Labatt on Master & Servant, sec. 2282; Jackson v. Robinson & Co., 7 Ky. Law Reporter 743; Wilson v. Railroad, 63 N. J. L. 385; Gewanski v. Ellsworth, 164 N. W. 996; Railroad v. Robinson, 173 S. W. 822; Lewis v. National Cash Register Co., 84 N. J. L. 598; Phillips v. Western Union Tel. Co., 270 Mo. 676; Carl Corper Brewing, etc., Co. v. Huggins, 96 Ill. App. 144.

*Kinealy & Kinealy* for respondent.

(1) On demurrer to the evidence plaintiff is entitled to every favorable inference to be drawn from the evidence. Knorpp v. Wagner, 195 Mo. 137; Enloe v. Car & Foundry Co., 240 Mo. 443. (2) The master is liable for the negligence of the servant within the scope of his employment, which includes all acts pertaining to or implied from his duties. 26 Cyc. 1518 tit. Mast. & Serv.; 18 R. C. L. 794-5, tit. Mast. & Serv.; Ephland v. Railroad, 137 Mo. 187; Barnes v. Railroad, 192 S. W. 1041; Green v. Standard Oil Co., 199 S. W. 746; Meux v. Haller, 179 Mo. App. 466. (3) The duties and scope of employment may be implied from the conduct of the parties; Kirkpatrick v. Pease, 202 Mo. 470; Moran B. & N. Co. v. St. L. Cav. Co., 210 Mo. 715;

Laclede Co. Co. v. Moss Tie Co., 185 Mo. 25; Lillard v. Wilson, 178 Mo. 145; Law Reporting Co. v. Grain Co., 135 Mo. 10; Reilly v. Railroad, 94 Mo. 600; Meux v. Haller, 179 Mo. App. 466; Weinsberg v. Cordage Co., 135 Mo. App. 553; Busch v. Busch, 81 Mo. App. 562; Patton v. Rea, 2 C. B. N. S. 606; Lovington v. Bauchens, 34 Ill. App. 544; Williams v. Nat. Cash Reg. Co., 157 Ky. 836; Lewis v. Nat. Cash Reg. Co., 84 N. J. L. 598; Singer Mfg. Co. v. Rahm, 132 U. S. 518; Standard Oil Co. v. Parkinson, 82 C. C. A. 29; Waters v. Pioneer Fuel Co., 52 Minn. 474; Turcotte v. Ryan, 39 Can. S. P. 8. (4) It is for the jury to draw inferences from the testimony. Guthrel v. Guthrel, 153 Mo. App. 215. (5) An act may be within the scope of the servant's employment, although it be unnecessary, or not required by the master, or even contrary to his orders. Chandler v. Gloyd, 217 Mo. 394; Moore v. Light Co., 163 Mo. App. 266; Shamp v. Lambert, 142 Mo. App. 567; Collett v. Rebori, 107 Mo. App. 711; Gibson v. Dupree, 26 Col. App. 324. (6) The discretion given a servant in and about the performance of his duty is to be considered in determining whether an act is within the scope of his employment. Canfield v. Railroad, 59 Mo. App. 354; Railroad v. Baugh, 149 U. S. 368; Barmore v. Railroad, 85 Miss. 426.

ALLEN, J.—Plaintiff, respondent here, instituted this action against the St. Louis Screw Company, a corporation, appellant here, and one Edward Mongrain, to recover damages for personal injuries sustained by plaintiff resulting from a collision between an automobile owned and operated by defendant Mongrain and a wagon driven by plaintiff. At the time of the collision defendant Mongrain was in the employ of his codefendant, the St. Louis Screw Company, as its master mechanic at a plant operated by that company in the city of St. Louis, and liability is asserted against that company upon the theory that Mongrain was acting within the scope of his employment as the company's servant at the time of plaintiff's injury. The

trial.. before the court and a jury, resulted in a verdict and judgment against both defendants in the sum of $4000. From this judgment the defendant St. Louis Screw Company alone has appealed.

The evidence shows that at the time of respondent's injury, to-wit, November 7, 1916, and for a long time prior thereto, the appellant owned and operated two plants in the city of St. Louis; one, termed the "north plant," was located at Prescott and Keber Streets, one block east of Broadway, while the other, termed the "south plant," was located on Clarence Avenue, a little more than a block east of Broadway, and nine or ten blocks south of the north plant. The north plant was a rolling mill, having in connection therewith a blacksmith shop, facilities for welding and other mechanical equipment. The south plant, at which was appellant's main office, was a screw factory.

Plaintiff was injured shortly before 5:40 P. M., on the day above mentioned. He was driving his horse and wagon northwardly on Prescott Avenue, between Broadway and appellant's south plant, crossing Clarence Avenue, a street extending east from Broadway to this south plant, when his wagon was struck by the automobile driven by Mongrain who was proceeding east on Clarence Avenue. The evidence touching the alleged negligence of Mongrain in operating the automobile, and the conduct of plaintiff in driving his wagon need not be stated, since upon this appeal, of the St. Louis Screw Company, no question is raised respecting these matters.

The evidence shows that as appellant's master mechanic Mongrain had under him a number of departments compromising defendant's north plant, or rolling mill. One English, Mongrain's immediate superior, was appellant's superintendent at the north plant, and next in authority above him was one Burgess, appellant's general manager. Mongrain testified that his duties, in general, were to repair machinery and try to keep the north plant in running order. English tes-

tified that Mongrain's duties, "in a general way," were "to take care of the machinery and keep it in running order, and to assist in new constructions and so forth—mechanical work."

On the day of plaintiff's injury two small castings, used upon a machine constituting a part of the equipment of the south plant, had been sent from the latter plant to the north plant to be repaired. The work of making such repairs was under Mongrain's supervision; but after any piece of machinery from the south plant had been repaired in the north plant it was usually turned over to the "storekeeper" of the latter plant to be delivered by him to some one sent from the south plant to receive it. Upon the occasion in question, at about five o'clock that afternoon, one Hollerman, foreman of the south plant, telephoned to Mongrain inquiring whether the repairs upon these castings had been completed. Mongrain told him that the castings would be ready within a few minutes; whereupon Hollerman said that he would send a boy for them. Mongrain thereupon said that it would not be necessary to send for them as he was going home soon and would take the castings to the south plant on his way home. It appears that Mongrain lived on north Grand Avenue and that to go home he would proceed south on Broadway, as far as Clarence Avenue, and that consequently to take these castings to that plant would require a deviation from his route of only about one block east from Broadway. He owned an automobile which, it appears, he had purchased in August of that year. He used this automobile in going to and from his work, used it whenever he was called out to the north plant at night to make repairs, as occasionally happened, and also used it at times in making trips to the south plant when his work required him to go there for any purpose. And he testified that he had used the machine, "once or twice" to deliver and call for castings upon which appellant had had machine work done outside of its plants.

It appears that Mongrain was allowed considerable discretion with respect to his movements and the per-

formance of his duties. English testified that Mongrain was accustomed to go to the south plant whenever he desired—"whenever the occasion might demand to Mr. Mongrain's notion;" that if Mongrain desired to go from the north plant to the south plant he sometimes asked permission and sometimes did not; that he "used his own pleasure."

It was shown in evidence, however, that appellant had provided facilities for transporting articles from one plant to another; that heavy articles were taken in trucks, and that ordinarily light articles, such as these castings, were carried by messenger boys.

The evidence shows that on the afternoon in question Mongrain, a few minutes before "quitting time," viz., 5:40 P. M., put these castings into his automobile, which was then standing in the street near the north plant, and drove south upon Broadway, turning east upon Clarence Avenue, to the point of the collision near the south plant. After striking plaintiff's wagon, and finding that plaintiff was injured, Mongrain went into the south plant where he procured assistance and delivered the casings. It is said that the collision occurred about two or three minutes before "quitting time" at the plants.

The evidence shows that several of the officers and superior servants of the appellant, including Mongrain, owned automobiles which they used more or less in prosecuting defendant's business. Burgess, the general manager, testified: "Practically all of the automobiles, to some extent, are used in the service of the company, which includes my own." And it was shown that Mongrain and the other superior servants or officers of appellant who owned automobiles and thus used them to some extent in appellant's business, with the exception of Burgess, were regularly furnished gasoline and oil therefor by appellant, and that the machines were kept in repair by appellant; though it is said that Mongrain, being a mechanic, did much of the repair work upon his own machine.

Appellant's learned counsel insists that under the evidence adduced appellant cannot be held liable, under the doctrine of *respondeat superior*, for the injuries inflicted upon plaintiff by reason of the alleged negligence of Mongrain. In support of this contention it is argued that in delivering these castings to the south plant, Mongrain was not acting within the course of his employment, as appellant's servant, but was voluntarily performing a service for which he was not employed, and for the performance of which appellant had provided messengers; and that consequently appellant is not liable for any negligence of Mongrain in performing such service. We are of the opinion, howver, that this contention cannot be sustained. In this connection appellant quotes the language of MAULE, J., in Mitchell v. Crassweller, L. R. 13 C. B. 235, l. c. 246, as stating correctly the rule of law here applicable, "stripped of the uncertainty which follows the use of such expressions as 'course of employment' or 'scope of employment.' " The language quoted is as follows:

"The master is liable even though the servant in the performance of his duties is guilty of a deviation or a failure to perform it in the strictest and most convenient manner. But where the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, the master cannot be said to do it by his servant, and therefore is not responsible for the negligence of the servant in doing it."

In that case the servant, whose duty it was at the close of the day to "put up" his master's horse and cart which he had been using in the master's business, drove the same upon a journey for the accommodation of another employee of the master, without the latter's consent, in the course of which he ran over the plaintiffs. The servant was therefore doing something which in no way pertained to the duties of his employment. The language quoted had reference to that situation, but may be misleading in a case such as that before us. Though Mongrain was not employed to act as a messen-

ger, nevertheless if the act of taking these castings to the south plant was one which pertained to the duties of his employment—one which he had implied authority to perform if he chose so to do, it was one within the scope of his employment, within the meaning of that term.

Appellant further quotes from a decision of this court in Farber v. Railroad, 32 Mo. App. 378, l. c. 381, 382, as follows: "The mere fact that a tortious act is committed by a servant while he is actually engaged in the performance of the service cannot make the master liable. Something more is required. It must not only be done while employed, but it must pertain to the duties of the employment. That has been repeatedly decided in this State. [McKeon v. Railroad, 42 Mo. 83; Snyder v. Railroad, 60 Mo. 419; Jackson v. Railroad, 87 Mo. 430.]"

The facts of the instant case, however, we think warrant the submission of the case to the jury upon the theory that the act of Mongrain here in question was not only one performed by him while employed by defendant, but was one pertaining to the duties of his employment. As appears from our statement of the facts, supra, Mongrain was allowed wide discretion with respect to his movements and the performance of duties which he deemed necessary or proper in connection with his main duties. He had authority to go to the south plant at any time; and he delivered castings, using his machine, whenever he saw fit to do so. Consequently when, before the close of working hours on the day of plaintiff's injury, he decided that he would return these castings to the south plant, rather than have a messenger sent from the latter place, it cannot be held as a matter of law that he was performing a service wholly beyond and without the scope of his employment, or not in any way pertaining thereto. On the contrary the act was one which a jury may find to have been within the scope of the employment and impliedly authorized by appellant.

In Garretzen v. Duenckel, 50 Mo. 104, l. c. 112, it is said: "When the servant acts in the course of his employment, although outside of his instructions, the master will be held responsible for his acts."

In Shamp v. Lambert, 142 Mo. App. 567, l. c. 575, 121 S. W. 770, it is said by this court, through Nortoni, J.: "The test for the prima-facie responsibility of the master in such cases is not whether the particular service being performed was specially authorized, but it is whether the act which occasioned the injury was within the scope of the servant's authority in prosecuting the business for which he was employed." [And see Snyder v. Railway, 60 Mo. 413; Chandler v. Gloyd, 217 Mo. 394, l. c. 415, 116 S. W. 1073; Scott v. Realty Co., 241 Mo. 112, 145 S. W. 48; Moore v. Light Co., 163 Mo. App. 266, 146 S. W. 825; Gibson, et al., v. Dupree, 26 Colo. App. 324.]

Further authorities cited by appellant in this connection are not controlling or persuasive upon the facts here involved.

And we regard it as quite clear that the evidence shows, prima facie, that the automobile used by Mongrain at the time of plaintiff's injury, was being used in the furtherance of appellant's business with the implied assent and authority of appellant, rendering appellant liable to respond for negligence in the use thereof. Though Mongrain owned the automobile, the evidence shows that it was habitually used in appellant's business, with the knowledge and assent of appellant's officers, in consideration of which appellant furnished Mongrain gasoline and oil and did repair work thereupon. It is immaterial that no express agreement in the nature of a hiring of the machine by appellant was shown; it is amply sufficient for plaintiff to show facts and circumstances from which it may be reasonably inferred that appellant impliedly authorized the use thereof for such purpose as Mongrain might see fit to put it in the pursuit of appellant's business. In this connection see: Patten v. Rea, 2 C. P. (N. S.) 606; Lovington v. Bauchens, 34 Ill. App. 544; Williams v.

Nat'l Cash Register Co., 157 Ky. 836, 164 S. W. 112; Lewis v. Nat'l Cash Register Co., 84 N. J. Law, 594; Waters v. Pioneer Fuel Co., 52 Minn. 474; Singer Mfg. Co. v. Ram, 132 U. S. 518; Standard Oil Co. v. Parkinson, 82 C. C. A. 29. [See, also Reilly v. Railroad, 94 Mo. 600, 7 S. W. 407.]

We think that the demurrer was well ruled.

By an instruction given at plaintiff's request, the court told the jury that the verdict should be against appellant if the jury found, among other things, that "at the time of the collision Mongrain was in the employ of defendant St. Louis Screw Company, and with its direction, knowledge and consent was using the automobile in question in said company's business." It is argued for appellant that there is no evidence to support a finding that Mongrain was using the automobile, at the time in question, at the direction of appellant; and that consequently in this respect this instruction is unsupported by the evidence. As to this we need only say that it was not necessary that the jury find that the automobile was being used by the direction of appellant, but that it sufficed to show that such use was with appellant's knowledge and consent, and hence with its implied authority. And the instruction in question is not fatally defective, since it requires the findngs mentioned in the conjunctive and hence simply requires the finding of more than is necessary to warrant a verdict for plaintiff.

We perceive no reversible error in the record, and the judgment should therefore be affirmed. It is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.