Patrick Louis OATES, Appellant,

v.

SAFECO INSURANCE COMPANY OF
AMERICA, Respondent.

No. 60892.

Supreme Court of Missouri,
En Banc.

July 17, 1979.

**714**

Donald L. Schlapprizzi, Murphy & Schlapprizzi, St. Louis, for appellant.

Daniel T. Rabbitt, Jr., Mark F. Haywood, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondent.

BARDGETT, Chief Justice.

This appeal involves the issue of whether a prior judgment adverse to plaintiff-appellant in an action against an uninsured motorist now precludes appellant from maintaining an action against his "uninsured motorist" insurance carrier because of the doctrine of collateral estoppel. This cause was transferred after opinion by the Missouri Court of Appeals, Eastern District, on application of respondent, pursuant to Rule 83.03. Portions of the Court of Appeals opinion will be utilized without the use of quotation marks.

On September 30, 1972, an automobile collision occurred in Iron County, Missouri, between the appellant, Patrick Oates, and one Bernard Coad. On January 15, 1973, Oates filed suit against Coad in Iron County. Mr. Coad filed an answer and counterclaim and further responded by way of interrogatory that he had no automobile insurance to cover his liability at the time of the collision. Oates answered the counterclaim through counsel retained by his insurance carrier, respondent, Safeco Insurance Company of America.

Thereafter, on April 25, 1973, Oates filed this suit in the city of St. Louis against respondent, Safeco, on the uninsured motorist provision in appellant's policy. On May 15, 1973, appellant Oates, by leave of court, dismissed his cause of action in Iron County against Mr. Coad without prejudice.

On May 29, 1973, Safeco moved that the city circuit court case be dismissed for lack of jurisdiction and venue. This motion was premised on allegations that Safeco had no office in the city and that St. Louis County was the proper venue and jurisdiction for the case. This motion was overruled on June 18, 1973.

On June 28, 1973, Safeco filed its answer to Oates's petition in St. Louis City Circuit Court in which Safeco admitted that Oates was an insured under a policy issued by it which included uninsured motorist coverage and that the policy was in effect on the day of the collision with Coad. No special defenses were raised.

Coad's counterclaim in the Iron County suit then proceeded to a judgment in Coad's favor for $1500 in April 1974. Upon that judgment becoming final, Safeco, on August 14, 1974, filed an amended answer in the St. Louis City suit setting forth the additional defenses of res judicata and estoppel by judgment against Oates, referring to Rule 55.32(a) and attaching a certified copy of the pleadings, instructions, and judgment from the Iron County suit. On joint motion for change of venue, the suit was transferred to the Circuit Court of St. Louis County in June of 1975.

On September 20, 1976, Oates struck all allegations of primary negligence from his petition and left remaining only the humanitarian negligence allegations against Safeco. Safeco reargued its motion to dismiss and the court sustained Safeco's position on the grounds that Oates was collaterally estopped by the Iron County judgment from proceeding in the case.

Appellant Oates contends that the trial court erred in dismissing his petition, whether it did so on the grounds of collateral estoppel, res judicata, or compulsory counterclaim. Respondent Safeco replies (1) that because appellant dismissed his suit against Coad, the uninsured motorist, initially instituted by him in Iron County, and permitted the negligence issues to be decided in Coad's favor on Coad's counterclaim in the tort action, the appellant is barred from pursuing his rights under the uninsured motorist coverage afforded by Safeco's policy by reason of Rule 55.32(a), the compulsory counterclaim rule; (2) that appellant's claim is barred by the doctrine of collateral estoppel because the liability of the uninsured motorist has already been decided adversely to him in the tort action and he may not relitigate that issue again in this proceeding; (3) that appellant's claim is barred by the doctrine of res judicata; and (4) that since appellant may not recover against Coad, the uninsured motorist, he may not recover under the terms of the policy of insurance issued to him by respondent Safeco.

I

Safeco contends, inter alia, the appellant was not "legally entitled to recover" damages against Coad after the termination of the Iron County case and is, therefore, precluded from proceeding against Safeco. One of the terms of uninsured motorist coverage is that the insured be legally entitled to recover against the tortfeasor.

■ To recover under an uninsured motorist policy, the insured does not need an unsatisfied judgment against the uninsured motorist, *Noland v. Farmers Insurance Exchange,* 413 S.W.2d 530 (Mo.App.1967), but has the burden of proving (1) that the other motorist was uninsured, (2) that the other motorist is legally liable to the insured, and (3) the amount of damages, *Noland, supra; Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606, 609 (Mo.App.1963). The second element set out is equivalent to the statutory and contractual requirement that the insured be "legally entitled to recover".

In *Crenshaw v. Great Central Insurance Co.,* 527 S.W.2d 1, 4 (Mo.App.1975), the court stated that the insureds must show "that *at the time [the] litigation against the insurer was commenced* [the insureds' action against the insurance company under the uninsured motorist clause] they . . . [the plaintiff was] . . . legally entitled to recover damages from the owner or operator of the uninsured highway vehicle." (Emphasis added.) See also *Byrn v. American Universal Insurance Co.,* 548 S.W.2d

186, 188 (Mo.App.1977). In *Crenshaw* the court held that the insured was not legally entitled to recover because the two-year wrongful death statute of limitations had lapsed before the insured filed suit under the uninsured motorist policy and, therefore, the insured was not "legally entitled to recover" at the time the litigation was commenced. See also *Hunt v. State Farm Mutual Auto Ins. Co.,* 560 S.W.2d 280, 282 (Mo.App.1977).

*Crenshaw* and *Hunt,* supra, stand only for the proposition that where there is a built-in, substantive limitation on the underlying tort action, which would bar insured's action against the uninsured motorist at the time the action is filed against the insurer under the uninsured motorist policy, such limitation also bars the action against the insurer. *Id.;* Davis, Uninsured Motorist Coverage: Some Significant Problems and Developments, 42 Mo.L.Rev. 1, 9 (1977).

However, in *Edwards v. State Farm Insurance Co.,* 574 S.W.2d 505, 506–507 (Mo. App.1978), the court held that the insured was not barred from proceeding against his uninsured motorist carrier even though the insured could not recover against the tortfeasor because the 5 year tort statute of limitation had expired prior to suit thus barring the insured's suit against the tortfeasor.

Additionally, in *Reese v. Preferred Risk Mutual Insurance Co.,* 457 S.W.2d 205 (Mo. App.1970), the insured originally sued both the uninsured motorist and the insurance company under the uninsured motorist clause; subsequently dismissed with prejudice the uninsured motorist, and then obtained a judgment against the insurance company. This judgment was set aside when the trial court sustained insurer's motion for a judgment n. o. v. on the grounds that the dismissal with prejudice of the uninsured motorist deprived insurer of any right to recover from the uninsured motorist and made it impossible for the insured to show he is "legally entitled to recover". On appeal the court reversed, reasoning that the dismissal with prejudice did not adjudicate the issue of whether insured is legally

entitled to recover from the uninsured motorist. The court stated at 208:

"This phrase 'legally entitled to recover' was discussed in *Booth v. Fireman's Fund Ins. Co.,* 253 La. 521, 218 So.2d 580, 583 where the court stated: ' * * * We interpret the words "legally entitled to recover" to mean simply that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. * * *'

"Also in *Sahloff v. Western Casualty & Surety Company,* Wis., 171 N.W.2d 914, 917 the court agreed with the Louisiana court's interpretation of this phrase in stating: ' * * * We think the phrase [legally entitled to recover] was used only to keep the fault principle as a basis for recovery against the insurer and deals with the question of whether the negligence of the uninsured motorist and the absence of contributory negligence is such as to allow the insured to recover. * * *'

"Again in *DeLuca v. Motor Vehicle Acc. Indem. Corp.,* 17 N.Y.2d 76, 268 N.Y. S.2d 289, 215 N.E.2d 482 the court stated that the language in question 'legally entitled to recover' simply means and denotes fault on the part of the uninsured motorist. *We agree with the interpretation placed on this phrase by these courts and hold that this phrase refers to fault on the part of the uninsured motorist. The phrase involves the causal negligence on the part of the uninsured motorist (and the absence of contributory negligence where submitted) and the resulting damages to the insured.* Also we believe this phrase is ambiguous and as such must be construed in favor of the insured." (Emphasis supplied.)

■ Under these decisions, the insured is "legally entitled to recover" if his action is not barred by a substantive limitation at the time the action is brought against the uninsured motorist carrier (*Crenshaw, supra*) and he can show (1) causal negligence or fault on the part of the uninsured motorist, (2) the absence of contributory negli-

gence where submitted, and (3) resulting damage to himself (*Reese, supra* ).

## II

Safeco contends that Oates was required by the compulsory counterclaim rule to litigate his claim in the Iron County case.

■ When Oates dismissed his claim against Coad in Iron County, Coad's counterclaim took the place of the petition. "[I]t must set forth all of the elements of and be subject to all the rules of procedure in civil actions *as if the suit had been begun by the defendant in the first instance.*" *Sharp v. Stiles,* 187 S.W.2d 770, 773 (Mo. App.1945). Once Coad's counterclaim became the original claim, Oates was subject to Rule 55.32(a), which governs compulsory counterclaims.

■ Oates's claim against Safeco under the uninsured motorist clause is a separate and distinct cause of action from Oates's tort claim against the uninsured motorist. *Hill v. Seaboard Fire & Marine Ins. Co., supra,* at 611; *Noland, supra,* at 533; *Edwards, supra,* at 506. This claim was not a compulsory counterclaim under Rule 55.-32(a) because it was not a claim against an opposing party (Coad) arising out of the same transaction or occurrence. The failure of Oates to assert his tort cause of action (either as a claim or counterclaim) against Coad does not affect Oates's action against Safeco because Oates is not required to assert any claim against Coad as a condition precedent to recovery under the insurance contract. *Noland, supra,* at 533.

■ The failure of Oates to assert the tort cause of action against Coad as a counterclaim waives Oates's cause of action in tort against Coad and prevents Safeco from exercising its right to subrogation which would arise upon payment to Oates. With respect to the uninsured motorist carrier's right to subrogation, as affecting the insured's right to sue the uninsured motorist carrier, *Edwards v. State Farm Insurance Co., supra,* at 508, holds that the insured is not barred from his uninsured motorist claim even though the insured's conduct prevents the company from exercising its subrogation right.

In *Edwards* the court, at 508, discussed the effect of the insurer's loss of its right to subrogation which resulted when the insured filed his action under the uninsured motorist policy after the five-year tort statute of limitations had lapsed, precluding the insurer from recovering against the uninsured motorist via subrogation. The court quoted and adopted the reasoning of *Sahloff v. Western Casualty & Surety Co.,* 45 Wis.2d 60, 171 N.W.2d 914, 918–919 (1969), which held that the contract statute of limitations applied to an insured's action under the uninsured motorist policy, 574 S.W.2d at 508:

"This is another phase of the [already rejected] argument that the insurer stands in the shoes of the uninsured motorist and therefore should have all his rights. The insurer has not so contracted in the uninsured motorist endorsement. * * * the action by an insured against his insurer under the uninsured motorist endorsement is an action on the policy and sounds in contract although in order to recover the insured must prove the negligence of an uninsured motorist. * *

"It is true an insurer * * * is put to some disadvantage when it can no longer pursue subrogation against an uninsured motorist. However, such hardship does not go to the nature of the cause of action and consequently does not determine what statute of limitations should apply. The application of any statute of limitations generally creates a hardship but it is a hardship because someone delayed doing what he might have done. * * * this argument overrates the importance of subrogation because an [un]insured motorist tends to be financially irresponsible and a subrogation right against such a person is not worth very much."

Oates's failure to assert a compulsory counterclaim constitutes a procedural waiver of the claim under Rule 55.32(a). The compulsory counterclaim rule is not a substantive limitation and therefore the holding of *Crenshaw, supra,* is inapplicable. The elements required under *Reese, supra,* to constitute legal entitlement to recover are not affected by the failure of Oates to assert a counterclaim in the Iron County suit because Oates may show causal negligence, the lack of contributory negligence, and resulting damage in the separate and distinct suit under the uninsured motorist clause regardless of the procedural waiver of his rights against Coad. *Cf. Edwards v. State Farm, supra,* wherein the procedural waiver of allowing the tort statute of limitations to lapse before suit was brought under the uninsured motorist contract did not prevent the insured from establishing he was "legally entitled to recover" in the contract action.

■ Therefore, the failure of Oates to assert his counterclaim does not preclude him from being "legally entitled to recover" because the compulsory counterclaim rule creates a procedural bar only.

In connection with these contentions of respondent, we must consider the situation in which Oates found himself between the time of the collision on September 30, 1972, and the date of the Iron County judgment on April 17, 1974.

In 1970 the case of *State ex rel. Cozean v. Meyer,* 449 S.W.2d 377 (Mo.App.1970) was decided. There, people named Darst, were injured in an automobile collision and sued the other automobile driver's (Hurst's) administrator and in a second count of the same case sued his own (plaintiff's) uninsured motorist carrier alleging the other driver, Hurst, was uninsured. Hurst filed a proceeding in prohibition alleging, inter alia, that plaintiff *improperly* joined the uninsured motorist carrier as a codefendant because the action against the other automobile driver (Hurst) was in tort whereas the action against the uninsured motorist carrier (*State Farm Mutual Ins. Co.*) was in contract.

The underlying facts of *Cozean* are similar to the instant case. The issue in *Cozean* was whether an injured plaintiff could sue the other automobile driver in tort and his (plaintiff's) insurance carrier in contract in the same case.

The court of appeals in *Cozean,* relying upon *State ex rel. Campbell v. James,* 263 S.W.2d 402 (Mo. banc 1953), held 449 S.W.2d at 380:

"The causes of action here attempted to be asserted against the relator [uninsured tortfeasor] and the insurer [uninsured motorist carrier] arise neither from the same transaction nor occurrence. One is in tort and the other on contract. Consequently they cannot be lawfully joined. This is a rule generally followed. *Lloyds' London v. Blair,* 10 Cir., 262 F.2d 211; *Holt v. Bell,* Okl., 392 P.2d 361; *Campbell v. Campbell,* 145 W.Va. 245, 114 S.E.2d 406. Since the respondent therefore is without jurisdiction of the causes attempted to be brought before him against the relator, prohibition will lie. *State ex rel. Gulf Oil Corporation v. Weinstein,* Mo.App., 379 S.W.2d 172."

Thus, at the time the *Oates v. Coad* suit was filed in Iron County (1973) and at the time of the Iron County judgment (1974) the existing state of the law prohibited Oates from joining is uninsured motorist insurance carrier—Safeco—as a party defendant in the Iron County tort action, even though under *Wells v. Hartford Accident & Indemnity Co.,* 459 S.W.2d 253 (Mo. banc 1970), the uninsured motorist carrier could have intervened on the side of the uninsured motorist.

It was not until February 1975, after the Iron County case was concluded, that this court decided *State ex rel. Farmers Ins. Co., Inc., v. Hon. Donald Murphy,* 518 S.W.2d 655 (Mo. banc 1975) and overruled *Cozean* holding that an uninsured motorist could sue the tortfeasor and his (plaintiff's) uninsured motorist carrier in the same action.

■ Inasmuch as appellant was prohibited by law from joining the tort and contract action by suing the other auto driver

and the uninsured motorist carrier it would seem wholly inappropriate to bar him from suing his insurance carrier *because* he failed to join the two claims. It seems clear that one would reasonably construe *Cozean* to mean that the two claims were considered in law to be separate and distinct and not affected by the counterclaim rule.

The court holds it was not necessary for Oates to counterclaim against Coad in order to present his claim against Safeco, the uninsured motorist carrier.

### III

Safeco contends Oates is barred from litigating the instant action because of (a) res judicata and (b) collateral estoppel, both arising out of the Iron County judgment adverse to Oates.

■ Traditionally, res judicata (claim preclusion) precludes the same parties from relitigating the same cause of action whereas collateral estoppel (issue preclusion) precluded the same parties from relitigating issues which had been previously adjudicated. Res judicata does not apply here because these are not the same parties or the same cause of action as in the Iron County case.

■ The concept of collateral estoppel has been extended, allowing strangers to the prior suit to assert collateral estoppel against parties to the prior suit to bar relitigation of issues previously adjudicated. This extension of the concept of collateral estoppel removes the requirement of mutuality of estoppel which required that the party asserting the estoppel also be bound by the estoppel. See, *Bernhard v. Bank of Am. Nat. Trust & Sav. Assn.*, 19 Cal.2d 807, 122 P.2d 892 (1942); *Blonder-Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *LaRose v. Casey*, 570 S.W.2d 746, 749–750 (Mo.App.1978).

■ As of 1976, most commentators listed Missouri among the states which strictly adhered to the requirement of mutuality of estoppel. Cunningham, Collateral Estoppel: The Changing Role of the Rule of Mutuality, 41 Mo.L.Rev. 521, 542 (Fall 1976). This court has not expressly abolished the requirement of mutuality but has allowed defensive use of issue preclusion by a stranger to the prior suit against a party to the prior suit. See, *Arata v. Monsanto Chemical Co.*, 351 S.W.2d 717 (Mo.1961). The Missouri Court of Appeals, Western District, has, however, expressly abolished the requirement of mutuality of estoppel and adopted the Bernhard Doctrine from *Bernhard v. Bank of Am. Nat. Trust & Sav. Assn.*, supra: *LaRose v. Casey*, supra, at 749–750. The Bernhard Doctrine requires a case-by-case, issue-by-issue review of the appropriateness of the application of collateral estoppel by a stranger to the prior suit. The court in reviewing whether the application of collateral estoppel is appropriate should consider: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *LaRose v. Casey*, supra, at 749; *Bernhard v. Bank, etc.*, supra, at 895. Most courts have added a fourth factor to the three enunciated by Chief Justice Traynor in the Bernhard case: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Collateral Estoppel, supra, 41 Mo.L.Rev. at 529; 860 *Executive Towers, Inc. v. Board of Assessors*, 385 N.Y.S.2d 604, 612 (A.D.1976); *Johnson v. U. S.*, 576 F.2d 606, 614 (5th Cir. 1978). Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality. *Johnson*, supra, at 614; *Freeman v. Marine Midland Bank—New York*, 419 F.Supp. 440, 448–449 (E.D.N.Y.1976); *Read v. Saaco*, 49 A.D.2d 471, 375 N.Y.S.2d 371, 375 (1975).

■ Among the numerous new problems created by uninsured motorist insurance coverage is the conflict of interest situation arising where, as here, the uninsured motorist asserts a counterclaim. It is no longer debatable that the insurance car-

rier has a right under Missouri law to intervene in a case where a claim is made that there is an uninsured motorist as a named defendant. *State ex rel. State Farm Mutual Automobile Insurance Company v. Craig,* 364 S.W.2d 343, 349[11] (Mo.App.1963). When it does so, the interest of the insurance company is inimical to that of its insured, and, more particularly this is true, where, as here, the uninsured motorist's counterclaim seeks damages in a lesser amount than the coverage afforded the insured under the terms of the uninsured motorist coverage contained in the policy of insurance issued by the carrier. The insurance company "wins" if a judgment goes against its insured and the company lets it become final by satisfying it.

Where this is so, the carrier is put in the untenable position where it must, in order to comply with the terms of its insurance policy, undertake to defend its insured in the tort action, while at the same time becoming an adversary against its insured to protect itself against the insured's establishing that he is legally entitled to recover against the uninsured motorist.

This has been recognized as constituting a conflict of interest. In *Allstate Insurance Company v. Hunt,* 450 S.W.2d 668, 671[1] (Tex.Civ.App.1970) it was held that it was not error to exclude the issuer of an automobile policy providing uninsured motorist coverage and its attorney from participation in the trial of a tort action wherein its insured was seeking damages against an uninsured motorist on the ground there was a conflict of interest. In *O'Bryan v. Leibson,* 446 S.W.2d 643, 644[2] (Ky.App.1969) the action of the circuit judge in striking the carrier's attorney from representing the plaintiff in defense of a counterclaim filed by an uninsured defendant, where the plaintiff also had joined the carrier as a defendant under the uninsured motorist's coverage, was permitted to stand because the insurance company attorney had a "dual allegiance" which overrode the carrier's right to defend her on the counterclaim. Additional authority for the obvious and almost constant conflict of interest problem in uninsured motorist coverage cases is found in Widiss, Uninsured Motorist Coverage §§ 7.2 and 7.3, p. 255.

Although the appellant makes no claim in this court that able defense counsel retained by the respondent rendered less than competent representation, he does argue that he should not be barred from proceeding in this contract action because he was not a party to both actions in the same capacity or quality. The basis for this argument is the conflict of interest problem discussed above, and which appellant contends removes him from the purview of collateral estoppel and res judicata.

None of the cases cited in the briefs or found in our research on collateral estoppel or res judicata are uninsured motorist cases. And very few of those noted involve a situation where there is a built-in conflict of interest between the parties.

In *Johnson v. United States, supra,* the court in considering the application of collateral estoppel quoted from the earlier case of *Bruzewski v. United States,* 181 F.2d 419 (3d Cir.), cert. den., 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), as follows (576 F.2d at 614):

"A party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so *unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.*"

In *Ferguson v. Birmingham Fire Ins. Co.,* 460 P.2d 342, 348 (Or. banc 1969), an insurer was attempting to avoid paying under a liability policy and the court holding the prior suit should bind the issue said: "The judgment should operate as an estoppel only where the interests of the insurer and the insured in defending the original action are identical—not where there is a conflict of interests."

Neither *Johnson v. U. S., supra,* nor *Ferguson v. Birmingham* are uninsured motor-

ist cases, but these and others demonstrate that a court, when called upon by one not a party to the initial litigation, to bar another from proceeding in court with a claim on collateral estoppel grounds, should carefully consider the equities of the particular situation, lest one be unjustly prevented from having a full and fair hearing on his claim.

The unique problems presented by uninsured motorist cases were addressed in the concurring opinion of Smith, P. J., in *Beard v. Jackson et al.,* 502 S.W.2d 416 (Mo.App. 1973), a case decided while *Cozean, supra,* was controlling and prior to *State ex rel. Farmers Ins. Co. v. Murphy, supra.* Judge Smith pointed out at l.c. 420, "Uninsured motorist litigation presents problems which are not easily resolved by application of common law principles or our present rules of procedure. * * * It appears to me that the unique nature of this type of litigation and the frequency with which it occurs would warrant an examination by the Supreme Court Rules Committee of procedures for this specific type of litigation. * * * When a unique and different type of litigation emerges we should develop procedures to efficiently deal with it. As to uninsured motorist litigation we have not as yet done so." The matter will be referred to an appropriate committee for a rule suggestion.

What Judge Smith said in *Beard* is applicable to this case also. The present rules simply are not calculated to afford fairness to the parties, because of the continuing conflict of interest problem which is simply exacerbated when the uninsured motorist counterclaims.

In these circumstances we believe it would be inequitable to apply the collateral estoppel rule so as to bar Oates from suing Safeco on the contract and therefore decline to do so.

The judgment dismissing appellant's petition is reversed and the cause is remanded to the Circuit Court of St. Louis County for further proceedings.

DONNELLY, RENDLEN, SEILER, WELLIVER and MORGAN, JJ., concur.