**Teresa Dell (Vaughn) THOMPSON, Appellant,**

v.

**ST. JOSEPH COUNTRY CLUB, Respondent.**

**No. WD 32305.**

Missouri Court of Appeals, Western District.

Feb. 16, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1982.

Application to Transfer Denied May 17, 1982.

KENNEDY, Judge.

Appellant Teresa Dell (Vaughn) Thompson, plaintiff below, recovered a verdict for $655,000 for personal injuries received when she was struck by a car driven by Jack Gordon, in an action against Gordon's employer, St. Joseph Country Club, Inc. The trial court set aside the verdict and entered judgment for the defendant, and the plaintiff appeals.

■ The issue presented by the appeal is whether there was any evidence from which the jury could find agency of Gordon for defendant Country Club at the time of the accident, so that Country Club may be held liable for Gordon's negligence under the doctrine of *respondeat superior.*

We hold there was no such evidence and affirm the judgment of the trial court.

The accident occurred July 4, 1976, at about 9:30 o'clock p. m. Appellant and a woman friend were talking together as they stood outside appellant's automobile on a lawn adjoining Highway 71 in St. Joseph. Gordon's car traveling along the highway left the highway and struck appellant, inflicting serious injuries. Gordon had earlier been a party to the lawsuit, but had settled with appellant and had been dismissed therefrom. He did not testify in the trial of the case, nor were any statements of his introduced into evidence.

Gordon was general manager of the defendant Country Club. The Country Club was located about one-fourth mile from the point where the accident took place, and on a direct route therefrom. There was no testimony as to where Gordon was going or what his business was in traveling down the road when the accident took place.

Plaintiff says the fact that Gordon was in the scope of his employment by defendant Country Club at the time of the accident, so that his negligence can be attributed to defendant Country Club, is a permissible inference from the following facts:

Gordon's employment as general manager of the Club made him responsible for the operation of the Club. He received a salary of $27,500 per year, plus an allowance of $100 per month for the use of his personal

Martin M. Bauman, St. Joseph, for appellant.

Paul H. Niewald and Stephen S. Brown, Kansas City, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

car. He was required by his written contract of employment to "devote his entire time, attention and energies to the business of the Employer, and shall not during the term of this agreement be engaged in any other business activity . . ." The car allowance was to reimburse him for his use of the car in connection with the Club's business. The vice-president of the Club, Mr. Hornaday, gave as examples of the kind of use Gordon might make of his personal car in the Club's business, "run checks to the board members for signing, to pick up groceries at the grocery store at the last minute . . ." Gordon had considerable discretion in the use of his time, and would sometimes spend as long as 12 to 14 hours at the Club in a day, depending upon activities at the Club, but was not required to keep regular working hours.

On the evening of the accident, there was an Independence Day party in progress at the Club, with an estimated 300 people in attendance. The jury might have found that most of them were still at the Club when the accident took place, for there was testimony that most of them stayed till the fireworks display ended at about 10 o'clock p. m.

There is nothing in the foregoing evidence that makes Gordon's agency for the Country Club at the time of the accident more than speculative. He could have been going on an errand for the Club, as appellant urges. He could have been on some mission in connection with his employment. But it is not enough to say that that *could have been* the case, for he could also have been on a mission of his own. He could have been going home after his day's work. He could have been on some other personal mission.

Appellant emphasizes the employment contract provision which required his "entire time" to be devoted to his employment, and the testimony of Mr. Hornaday, the vice-president of the Club, that Gordon sometimes worked 12 to 14 hours in a day. She points also to evidence that he was subject to call at any time, and that he received from the Club $100 per month as reimbursement for the use of his personal car. Appellant asks us to permit the jury

to infer from such evidence that Gordon was hastening to get something needed at the Club when the accident occurred. The evidence, however, supports no such conclusion.

A contract of employment requiring that one's entire time be devoted to his employer's business does not make his employer responsible for all his activities during every hour of every day. Such a contract provision is held only to entitle the employer to the employee's services exclusively, and to prohibit the employee's entering into the employ of another or pursuing some business of his own. It does not prevent normal rest, recreation and personal activities free of the employer's control. *Durwood v. Dubinsky*, 361 S.W.2d 779, 789 (Mo.1962); *First Calumet Trust & Savings Bank v. Rogers*, 289 F. 953 (7th Cir. 1923). While the employee is engaged in such personal pursuits, the employer is not liable for his acts under the doctrine of *respondeat superior*. *Bissell v. McElligott*, 369 F.2d 115 (8th Cir. 1966), *cert. denied* 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967); *Van Hook v. Strassberger*, 259 S.W.2d 399, 405[6] (Mo.App.1953). The fact the employer could summon him from his private pursuits to the performance of some task for the employer does not bring the employee's private activities within the scope of his employment. *Pyles v. Bos Lines, Inc.*, 427 S.W.2d 790, 794 (Mo.App.1968). See also *Kansas City, Missouri Police Department v. Bradshaw*, 606 S.W.2d 227 (Mo.App.1980).

We have examined the cases cited to us by appellant in its brief, wherein the court has held that the evidence has made a submissible jury issue on the question of agency. None of the cases are quite like the one before us. In each case the activity of the employee, during the course of which his negligent act occurred, and the relationship of the activity to his employment, were delineated by direct evidence. The question in each case was whether a known (or given) activity, with a known (or given) connection with his employment, was within the scope of the employment. *Steinmetz v. Saathoff*, 84 S.W.2d 437 (Mo.App.1935); *Gardner v. Simmons*, 370 S.W.2d 359 (Mo. 1963); *Smith v. Fine*, 351 Mo. 1179, 175

S.W.2d 761 (1943); *Smoot v. Marks*, 564 S.W.2d 231 (Mo.App. banc 1978); *Gordner v. St. Louis Screw Company*, 201 Mo.App. 349, 210 S.W. 930 (1919); *Margulis v. National Enameling and Stamping Company*, 324 Mo. 420, 23 S.W.2d 1049 (1929); *Chiles v. Metropolitan Life Insurance Co.*, 230 Mo.App. 350, 91 S.W.2d 164 (1936), *criticised* in *Reiling v. Missouri Insurance Co.*, 236 Mo.App. 164, 153 S.W.2d 79, 86 (1941); *Silent Automatic Sales Corp. v. Stayton*, 45 F.2d 471 (8th Cir. 1931); and *Borgstede v. Waldbauer*, 337 Mo. 1205, 88 S.W.2d 373 (Mo. banc 1935), *overruled in part in Riggs v. Higgins*, 341 Mo. 1, 106 S.W.2d 1, 5 (Mo. banc 1937) (see also *Klotsch v. P. F. Collier & Son Corp.*, 349 Mo. 40, 159 S.W.2d 589 (Mo. banc 1942)). We have no such proof in this case. The jury, as we have shown, was entirely at sea as to the relationship between Gordon's employment for defendant Country Club and his driving his automobile down the highway when he struck and injured the appellant.

The judgment is affirmed.

All concur.