Donald S. HELM, et ux., Appellants,

v.

Jack WISMAR, et al., Respondents.

No. 73929.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1991.

Rehearing Denied Jan. 28, 1992.

Daniel P. Card, II, Leigh Joy Carson, Burton W. Newman, Clayton, for appellants.

Robert J. Foley, Timothy J. Gallagher, St. Louis, for respondents.

ROBERTSON, Chief Justice.

Donald S. Helm sued Jack Wismar and Wismar's employer, Eaton–Kenway, Inc., for personal injury damages arising out of an automobile accident. His wife, Jean, joined as a plaintiff seeking recovery for loss of consortium. The trial judge directed a verdict against the plaintiffs and in favor of the employer at the close of the plaintiff's case. The jury returned a verdict for Donald and against Wismar in the amount of $125,000, but found for the defendant on Jean's claim. The plaintiffs appealed and Wismar did not. The Court of Appeals, Eastern District, affirmed. We granted transfer to consider alleged conflict with *Brunk v. Hamilton–Brown Shoe Co.*, 334 Mo. 517, 66 S.W.2d 903 (1933), and now affirm the judgment against Wismar, but reverse the judgment on directed verdict in favor of the employer and remand for new trial.

### I.

Eaton–Kenway, Inc. is an Ohio corporation. It employed Wismar, a resident of Salt Lake City, as a travelling salesman. He flew to St. Louis on his employer's business. The employer furnished him a rental car and a hotel room, and reimbursed him for meals in St. Louis. He called on several customers and then returned to his hotel room, after which he drove in the direction of a shopping mall. He testified that he planned to buy his wife a present and to eat dinner. The accident happened before he reached the mall.

### A.

■ We find *Brunk* indistinguishable. There a salesman for a shoe company traveled by automobile from his employer's headquarters in Kirksville to various towns in Northeast Missouri to call on customers. He made his last call of the day at Atlanta, after which he drove to LaPlata, ate dinner,

and started back to Kirksville. The accident occurred before he reached Kirksville. We sustained a judgment on a jury verdict on the theory that the salesman was engaged in his employer's business from the time he left Kirksville until he returned, concluding that it made no difference that he had finished his calls for the day or that he had stopped for a meal. We said at page 66 S.W.2d at 907:

> If he did not return in time for his evening meal, he would not be deviating from his employment in stopping to eat. Cessation of work for eating, drinking, and other like necessities are necessary incidents of employment, and an employee so engaged does not sever his relation from his work, nor does he do so by going to and from his places of work.

Here, Wismar was away from home and in St. Louis only because of his employer's business. He, of course, had to eat regular meals while in St. Louis. We reject any suggestion that his hotel room was a home away from home, so that his employer's business ended when he reached his room. Nothing indicates that the employer required him to patronize the hotel restaurant, and so he did not deviate from his employment in seeking a meal outside the hotel. The jury could have found that the purchase of a present was incidental, so that service to the employer was a "concurrent cause" of the journey. *Marks' Dependents v. Gray*, 251 N.Y. 90, 167 N.E. 181, 183 (1929) (Cardozo, C.J.); *O'Dell v. Lost Trail, Inc.*, 339 Mo. 1108, 100 S.W.2d 289, 293 (1936). The direction of a verdict was patent error.

The defendant employer and the court of appeals cite *Thompson v. St. Joseph Country Club*, 632 S.W.2d 6 (Mo.App.1982). The case is clearly distinguishable because it involved an employee in his home city. The court held that the payment by the employer of a monthly car allowance did not support a finding that the employee was necessarily on the employer's business whenever he was driving his car.

### B.

Donald is manifestly dissatisfied with the amount of his verdict, and asserts several grounds in support of a new trial.

He argues that the verdict is shockingly inadequate, considering the seriousness of the injuries and the proved loss of earnings. We see nothing more than a jury resolution of disputed issues of fact as to the cause of Donald's disability and the degree of his pain and suffering. There is no basis for our intervention.

It is next argued that the court erred in refusing to allow plaintiffs' co-counsel to read the deposition testimony of James Huber. Huber was listed by the defendants as an economic expert who "will testify." Then the defendants decided that they did not need his testimony and did not call him, after which plaintiffs' counsel sought to read a portion of his deposition. The defense objected, and the court sustained the objection. Plaintiffs suggest that this ruling is erroneous because of the defendant's representation that Huber would testify.

We do not agree. Counsel's statement that the witness "will testify" is not one on which opposing counsel have the right to rely. Lawyers may change their strategy as the needs of trial dictate. The deposition testimony could be admitted over objection only if a foundation were laid showing unavailability under Rule 57.-07(a)(3). Oral testimony is to be preferred to deposition testimony. The plaintiffs made no effort to lay the required foundation, and did not request a continuance in order to attempt service of a subpoena before trial. It is entirely appropriate to subpoena the other side's witnesses. It is finally urged that the court erred in excluding a videotape of "a day in the life of Donald Helm," illustrating the problems posed by his disability. The court sustained an objection to the admission of the tape, pointing out that Mr. Helm was present in court for the jury's observation. The court's discretionary ruling is supported by *Repple v. Barnes Hospital*, 778 S.W.2d 819 (Mo.App.1989). *Lawton v. Jewish Hospital of St. Louis*, 679 S.W.2d 370 (Mo.App.1984), is distinguishable because there the plaintiff's health prevented him from appearing at trial. We sustain the trial court's exercise of discretion.

### C.

The issue of the scope of retrial against the employer remains. Under the doctrine of respondeat superior, a master is liable for the negligent acts of his servant, despite the absence of any direct negligence on the master's part, provided the servant's acts are within the scope of his duties to the master. Respondeat superior found early justification in the fiction of the master's control over his servants or an assumed negligence by the master in hiring the tortfeasor. Modern legal theory supports the doctrine on the basis of risk allocation; "[t]he losses caused by the torts of employees ... are placed upon the enterprise itself, as a required cost of doing business." This is because the employer "is better able to absorb [the losses], and to distribute them, through prices, rates or liability insurance, to the public." *Prosser and Keeton on the Law of Torts*, §§ 69–71 at 500 (5th ed. 1984). Whatever the justification for the doctrine, however, the master/employer bears liability as a result of the acts of his servant/employee. Indeed, if a jury finds that the employee is not negligent, the employer is exonerated as a matter of law.

It follows, therefore, that the liability of the employer can be no greater than the liability of the employee. This is because there is only one act of negligence that forms the basis of the plaintiff's injuries. The employer is not separately liable because he is not separately negligent; instead, the employer's liability is imputed as a matter of law from the negligent acts of the employee.

The plaintiff's damages are fixed by the employee's liability as well. Because the plaintiff's injuries do not result from the direct negligence of the employer, the employer is no more than an additional pocket from which the plaintiff can extract his judgment for the injuries caused by the employee's negligence.

*The Restatement (Second) of Judgments*, § 51 suggests:

If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.

\* \* \* \* \* \*

(2) A judgment in favor of the injured person is conclusive upon him as to the amount of his damages, unless:

(a) There were limitations on the competence of the forum in the first action preventing him from obtaining the full measure of his damages . . . ; or

(b) Different rules govern the measure of damages in the two actions.

Comment d to § 51 informs that:

A judgment for the injured person, even though favorable to him on the question of liability, is adverse to him insofar as it determines that his damages did not exceed those awarded. It is therefore ordinarily conclusive as a ceiling on the damages that may be recovered in the second action.

Section 51 of the Restatement reports well-developed rules of collateral estoppel recognized in this state.

"[C]ollateral estoppel removes the requirement of mutuality of estoppel." *Oates v. Safeco Insurance Company of America,* 583 S.W.2d 713, 719 (Mo. banc 1979). In *Oates,* this Court considered whether "a prior judgment adverse to plaintiff-appellant in an action against an uninsured motorist now precludes appellant from maintaining an action against his 'uninsured motorist' insurance carrier because of the doctrine of collateral estoppel." *Id.* at 714. *Oates* "set out the . . . principles for application of collateral estoppel." *Hudson v. Carr,* 668 S.W.2d 68, 70 (Mo. banc 1984). The Court recognized that where: (1) the issue decided in a prior adjudication is identical to the issue presented in the present action; (2) the prior adjudication results in a judgment on the merits; (3) the party against whom collateral estoppel is asserted is a party in the prior adjudication; and (4) the party

against whom collateral estoppel is asserted receives a full and fair opportunity to litigate the issue in the prior suit, collateral estoppel may be used offensively to preclude new litigation on the previously decided issue. *Oates,* 583 S.W.2d at 719. Citing the "untenable" conflict between the insurance company's interests in prosecuting the insured's tort action against the uninsured motorist and its own interest in "protect[ing] itself against the insured's establishing that he is legally entitled to recover" under the policy, 583 S.W.2d at 720, the Court reasoned that the insured did not have a full and fair opportunity to litigate the issue in the prior proceeding and refused to apply collateral estoppel.

■ Applying the *Oates* test to the case at bar, the plaintiff is precluded from relitigating the issue of damages against Eaton–Kenway. (1) The damage issue is identical; indeed the jury has previously considered and awarded damages for the exact injury for which plaintiff seeks to find Eaton–Kenway vicariously liable. (2) The prior adjudication against the employee clearly resulted in a judgment for plaintiff's damages on the merits. (3) The party against whom collateral estoppel is asserted is the same party who now seeks the new trial. (4) Finally, the plaintiff had a full and fair opportunity to litigate the damage issue at the initial trial. In sum, the application of collateral estoppel in this case is inherently fair. The plaintiff has had his day in court; his full damages were fixed by the jury; he is not entitled to any greater assessment of damages against Eaton–Kenway.

The trial court erred in directing a verdict for Eaton–Kenway. That judgment must be reversed and the cause remanded. The remand should properly serve only to establish whether Eaton–Kenway is liable, vicariously, for plaintiff's damages. Should the jury so find, it may assess damages against Eaton–Kenway, but that assessment may not exceed the damages assessed in the first trial. Said another way, the jury's damage award in the first trial sets a ceiling for Eaton–Kenway's damages in the second trial. This is because plain-

tiff has already fully litigated his damages for these injuries and collateral estoppel prevents relitigation of the damage issue. Eaton–Kenway, which did not have an opportunity to defend in the first case, may offer its defense on remand. This is because collateral estoppel does not apply to Eaton–Kenway; it did not have a full and fair opportunity to defend itself in the first trial.

## II.

The judgment in favor of the defendants and against Jean Helm is affirmed. The judgment against Wismar is affirmed. The judgment on directed verdict in favor of Eaton–Kenway, Inc., and against Donald Helm is reversed and the case is remanded for trial.

COVINGTON and HOLSTEIN, JJ., and O'MALLEY, Special Judge, concur.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

RENDLEN and BENTON, JJ., concur in part and dissent in part in concurring in part and dissenting in part opinion of BLACKMAR, J.

THOMAS, J., not participating because not a member of the Court when case was submitted.

BLACKMAR, Judge, concurring in part and dissenting in part.

I concur in Parts I–A and I–B of the principal opinion, which speak with special eloquence. I dissent from Parts I–C and II and from the scope of the remand.

The venerable Justice Oliver Wendell Holmes reminds us that "[t]he life of the law has not been logic: it has been experience." Holmes, *The Common Law* 1 (Little, Brown & Company 1948). Part I–C of the principal opinion is swimming in logic. It would commend itself to a lawyer of mechanical turn of mind.

But, as any experienced trial observer knows, juries often return larger awards when an employer is a party than might be returned against individual defendants. These plaintiffs properly chose the employer as an additional defendant. The trial judge excused the employer, in a ruling which was patently erroneous. The question is whether we are compelled by substantial authority to allow the defendant employer the intangible benefit of this erroneous ruling. I submit that we are not.

Collateral estoppel is a flexible concept, especially when the parties are not identical. In *Oates v. Safeco Insurance Company of America*, 583 S.W.2d 713 (Mo. banc 1979), more often cited for its dicta than for its holding, the Court expostulated on the law of collateral estoppel, but went on to hold that a claimant against an uninsured motorist insurer could be maintained even though the same claimant had lost his right to recover against the actual uninsured motorist. Every mechanical argument that could be made in favor of the result reached by the principal opinion could be made against the actual result of *Oates*. The insurance was designed to provide coverage only for a meritorious claim against an uninsured motorist. Yet the Court felt that it would not be just to bar the claimant's suit against the carrier, under the circumstances of the case.

In *Brickner v. Normandy Osteopathic Hospital*, 687 S.W.2d 910 (Mo.App.1985), a hospital was erroneously excused on directed verdict at the close of all the evidence. The court of appeals found error in this, and undertook to, "insofar as is practicable, ... put the parties in the position they would have been had no uncorrected trial court error occurred." *Brickner*, 687 S.W.2d at 914. There the court thought it best to limit the retrial to liability only, pointing out that the plaintiff did not argue that the verdict was inadequate. Here, realistically, the parties can be put in the position they would have occupied, absent the error, only if a complete new trial is afforded plaintiff Donald Helm against the employer.[1]

---

1. In drawing the careful distinctions required by cases of this kind, I would agree that the verdict against plaintiff Jean Helm and in favor of the employee should not be disturbed. It is not unreasonable to assume that the finding of

The principal opinion cites *Restatement (Second) of Judgments, § 51 comment d,* but the comment is not grounded in the case law. The restaters drew a logical conclusion about a hypothetical situation, but, as centuries of experience under the common law have shown, it is not possible to foresee all potential variations on a doctrinal theme. The reason for the employer's absence from the initial litigation is an appropriate consideration.

The closest case I have found is *Collins v. Board of Medical Examiners,* 29 Cal. App.3d 439, 105 Cal.Rptr. 634 (Cal.App. 1972), in which a plaintiff took a default judgment against an employee and then proceeded to trial against the employer. The district court of appeal held that the plaintiff was limited to the amount of the default judgment. The case is distinguishable in that the plaintiff voluntarily elected to take the default judgment. Here the employer was excused at its own instance, and over the objection of the plaintiff.

One thing is sure. Had the plaintiff recovered a multi-million dollar verdict against the employee, the employer could not be bound by the amount, because it was not a party to the verdict. Under these circumstances, it is wise to apply a rule of reciprocity, so that the plaintiff may have the benefit of his choice of defendants. Reciprocity of collateral estoppel is the normal holding; exceptions should be justified by special circumstances.

The employer derived an undeserved benefit from the erroneous sustaining of its motion for directed verdict. Now the Court simply tells the plaintiff that this is the rub of the green. The employee should not be punished for this error. The state of the case law does not require it.

The principal opinion should also take the opportunity to remind trial judges that they should not withhold issues from the jury, unless the case is very clear. Motions for directed verdict may always be reconsidered at the post-trial stage. Here the hasty sustention produces manifest injustice.

liability would not be different, had the employ-

I would reverse the judgment in favor of the employer and against Donald Helm, and would remand for a complete new trial of his claim.