**In re Michael Anthony ENNIS and Carolyn Ennis, a/k/a Carolyn Friedell, Debtors.**

**Bankruptcy No. 94–60780 KMS.**

United States Bankruptcy Court, W.D. Missouri, Southern Division.

Jan. 6, 1995.

■■■■■

Thomas J. Carlson, Springfield, MO, James G. Tichenor, Des Moines, IA, for Morris Friedell.

Thomas J. O'Neal, St. Louis, MO, for Norwest Bank and Paul Ahler.

Richard V. Fink, Chapter 13 Trustee, Kansas City, MO.

Michael A. Ennis and Carolyn Ennis, pro se.

### ORDER GRANTING FRIEDELL MOTION TO TERMINATE AUTOMATIC STAY, DENYING DEBTORS' MOTION FOR ADVANCE OF FUNDS, AND DENYING CONFIRMATION OF PLAN

KAREN M. SEE, Bankruptcy Judge.

On December 19, 1994 in Kansas City, Missouri, the Court took up various matters, including the hearing on confirmation of debtors' plan, the motion of Morris Friedell for relief from stay or in the alternative to dismiss the debtors' Chapter 13 petition, the Chapter 13 Trustee's motion to dismiss the case if a plan is not confirmed, and debtors' motion to use part of the funds in which creditor Friedell claims a security interest. Appearances were: debtors Carolyn Ennis and Michael Ennis, who appeared in person and represented themselves; Richard Fink, Chapter 13 Trustee; attorneys Thomas J. Carlson and James Tichenor for secured creditor Morris Friedell; and attorney Thomas J. O'Neal for Norwest Bank and Paul Ahlers, executor of the probate estate of Rose Kubby.

### I. INTRODUCTION

The court has carefully reviewed the evidence, arguments, the parties and witnesses, and the file (including post-hearing correspondence submitted by the parties). Creditor Morris Friedell presented testimony and documentary evidence. The parties stipulated to the admission of additional documents. The only testimony presented by debtors was the testimony offered by debtor Michael Ennis which was objected to on the basis that it was both hearsay and irrelevant. Debtor Carolyn Ennis did not testify. For the reasons set forth below, the court sustains the creditor's motion for relief from stay, denies debtors' motion to obtain an advance of funds from an inheritance, denies confirmation of debtors' plan, and orders that debtors file an amended plan within 15 days of the hearing date, as directed on the record at the conclusion of the hearing.

The issue central to all the pending motions and the debtor's plan is whether creditor Morris Friedell has a duly perfected security interest in funds totalling $107,488.33 in the probate estate of Carolyn Ennis's deceased mother, Rose Kubby. The funds are part of Carolyn Ennis's share of the estate as an heir of Rose Kubby. Creditor Morris Friedell claims a perfected security interest and judicial lien in the funds. The ruling on the motion to lift stay will resolve the debtors' objection to the claim of Morris Friedell and debtors' turnover action against Mr. Ahlers, the executor, both of which are set for trial on January 9, 1995. The ruling on the motion to lift stay will also determine whether debtors' request for advances from the inheritance should be allowed and whether the pending plan should be confirmed.

### II. FACTS

This case has a long history. In 1971 Morris and Carolyn Friedell (now Carolyn Ennis) were divorced in California. In 1981 a stipulation was filed in the divorce case, the pertinent terms of which provided that when Mrs. Friedell sold the marital home in which she was living, the net profit would be divided evenly between her and Morris Friedell. In recent years, after the divorce and stipulation between Morris and Carolyn Friedell, Carolyn Friedell and Michael Ennis, debtors herein, were married.

At the bankruptcy court hearing on December 19, 1994, debtors alleged in argument that either she did not sign the stipulation in 1981 and that it was a forgery, or that if she did sign it, she was on SSI and therefore was not competent to sign the document. Caro-

lyn Ennis did not testify, and the testimony of Michael Ennis was inadmissible as hearsay. There is no competent evidence in the record of the alleged incompetence or disability at any time, either in 1981 or at present time. However, it is not necessary to reach these issues in making a determination that the automatic stay should be terminated.[1]

■ Debtors also contended a quitclaim deed from Morris Friedell to Carolyn Friedell superseded or invalidated the stipulation. The court rejects the contention that the quitclaim deed evidenced cancellation of the stipulation. Rather, the quitclaim deed is consistent with the stipulation which contemplates that Carolyn Friedell would receive the home, that she would eventually sell it, and the net proceeds would then be equally divided.

In August, 1987, Carolyn Friedell sold the house but, contrary to the terms of the stipulation, did not pay Morris Friedell his half of the net proceeds. On November 19, 1991, debtors Carolyn and Michael Ennis filed a Chapter 7 bankruptcy case in Seattle, Washington, but they failed to list Morris Friedell as a creditor. On June 24, 1992 debtors received a Chapter 7 discharge.

On December 21, 1992, in California state court, Mr. Friedell obtained a judgment finding that his former wife was indebted to him in the sum of $73,575, plus interest at the rate of 10 per cent per annum from August 5, 1987 based on her failure to pay him one half the net proceeds of sale pursuant to the stipulation. With accrued interest through August 31, 1994, the date debtors filed this Chapter 13 proceeding, the judgment now totals $125,641.91.[2] Carolyn Friedell Ennis was aware of the proceeding, had been in contact with Mr. Friedell's counsel, and had the opportunity to appear and defend on the merits of the case, but she did not appear at trial and by default allowed the matter to proceed to judgment. She did try to appeal the judgment years later, after her inheritance was in peril when the proceedings discussed below were commenced in Iowa courts, but the California appellate court dismissed the appeal.

On July 26, 1993, Mr. Friedell registered the California judgment in Polk County, Iowa, where a probate estate had been opened for Rose Kubby, the deceased mother of Carolyn Friedell. Carolyn Friedell Ennis received an interim distribution in October,

1. At this hearing and at the preliminary hearing on the motion to lift stay, on November 22, 1994, debtors have suggested but never presented evidence that Carolyn Ennis is disabled or incompetent. At the hearing on December 19, 1994, the only evidence presented was Mr. Ennis's hearsay testimony of events in 1981 which he did not personally observe. Carolyn Ennis did not testify and no other evidence of disability or incompetency was offered. At the preliminary hearing on November 22, 1994, Carolyn Ennis requested that the court allow her doctor to appear and testify by telephone. The court declined to permit testimony by telephone. Debtors have never offered the testimony of the doctor as a witness appearing in person in court or at a deposition. In observing Carolyn Ennis during the hearing on December 19, 1994, the court concludes that while Carolyn Ennis may be somewhat emotional and angry, she does not appear to be either incompetent or disabled. In fact, the court concludes that from review of her research for the hearing and her pleadings, she appears to be extremely intelligent, competent, and persistent. The fact that one engages in outbursts or displays anger or frustration does not require the conclusion that the person is disabled.

2. The amount of the secured claim allowed for purposes of this hearing on the motion to termi-

nate automatic stay is slightly different than the amount offered by the creditor at the hearing. Creditor Friedell calculated the claim at $132,-820, as set forth in an amended proof of claim filed on or about September 30, 1994. However, that figure appears to include compounded interest, so the court recalculated the interest without compounding, resulting in the amount of $125,-641.91 (comprised of the principal of $73,575, plus interest of $52,066.91, calculated at 10% per annum for 2,583 days, from August 5, 1987 through August 31, 1994). For purposes of this hearing, the court finds sufficient evidence was submitted to allow the claim as non-contingent, liquidated and secured in the amount of $125,-641.91.

Debtors' objection to the Morris Friedell claim and debtors' adversary action against executor Paul Ahlers, seeking turnover of the funds, are set for trial on January 9, 1995. It appears that the rulings made herein as a result of the December 19, 1994 hearing will be applicable at that hearing because the objection to the claim appears to be the same as the objections to the motion to lift stay, and it also appears that the issues relating to the request for turnover and the parties' claims to the funds have been ruled in this order ruling the motion to terminate automatic stay.

1993, and she was due to receive a final distribution of $107,488.33.

On January 5, 1994 Mr. Friedell garnished the estate to satisfy his judgment, which had grown to about $120,850 by that time. The amount of money still due Carolyn Friedell Ennis from her mother's estate was $107,-488.33. Carolyn Ennis moved to quash the garnishment in February, 1994, alleging lack of proper notice. This motion was overruled by the Iowa District Court for Polk County on May 17, 1994. On June 18, 1994, Mr. Friedell filed an application to condemn funds in the garnishment action.

On June 22, 1994, Carolyn Ennis filed a motion to reopen her Chapter 7 bankruptcy case in Washington in order to schedule and then discharge the debt to her former husband in order to defeat the registration of judgment and garnishment in Iowa. On July 1, 1994, the Iowa District Court for Polk County issued an order condemning funds in the Polk County garnishment. On July 22, 1994, after a hearing, the motion to reopen the Washington bankruptcy case was denied by Bankruptcy Judge Thomas T. Glover. The Judge specifically held that the debt to Mr. Friedell had not been discharged.

Carolyn Ennis next filed a motion with the Iowa District Court alleging newly discovered evidence. This evidence consisted mainly of her legal research in the bankruptcy area. She argued that *In re Beezley,* 994 F.2d 1433 (9th Cir.1993) and *In re Miller,* 159 B.R. 849 (Bkrtcy.E.D.Ark.1993) held that the debt to her former husband was discharged even though he had not been scheduled as a creditor. That matter should have been brought before the Washington bankruptcy court, and as stated above, was in fact addressed by

Bankruptcy Judge Glover in Washington. The Iowa District Court denied the motion alleging newly discovered evidence on August 25, 1994.

On August 31, 1994, debtors then filed a Chapter 13 bankruptcy proceeding in the Western District of Missouri, Southern Division. Mr. and Mrs. Ennis proceeded pro se in this case. For a short period, they retained an attorney, Norman Rouse, but they discharged him and again proceeded pro se. It should be noted at this time that the only proceeding in which debtors have appeared pro se is the current Missouri bankruptcy proceeding. Debtors have been represented by counsel in the other proceedings, including the Washington bankruptcy proceedings, the Iowa probate and district court proceedings and, it appears from the evidence, at least part if not all of the time in the California litigation which resulted in the judgment on violation of the stipulation (including post-trial and appellate stages) according to references in documents and testimony in evidence at the December 19, 1994 bankruptcy court hearing.

Creditor Morris Friedell filed a motion for relief from the stay on September 30, 1994. Two answers were filed on debtors' behalf: one by counsel Norman Rouse, who represented debtors for a brief period, and one by debtors pro se. The motion was set for an initial, non-evidentiary hearing on November 8, 1994. At that hearing, the matter was set over to November 22, 1994. During the hearing on November 22, 1994, debtor Carolyn Friedell Ennis requested that the matter be continued. The Court rescheduled the matter for a final, evidentiary hearing on December 19, 1994 in Kansas City.[3]

3. The preliminary hearing on November 22 was conducted telephonically because it was anticipated to be argument only and did not involve the presentation of evidence. Attorneys Carlson and O'Neal (counsel for Morris Friedell and executor Paul Ahlers) and debtor Carolyn Ennis appeared in the courtroom in Springfield, where they were connected by telephone to the courtroom in Kansas City. The judge, debtor Michael Ennis and Chapter 13 Trustee Richard Fink appeared in the courtroom in Kansas City. Attorney Tichenor (who was not the lead attorney for creditor Friedell) was permitted to appear by telephone from Iowa.

At the November 22 hearing the court scheduled the final hearing for December 19 in Kansas City. All interested parties were required to appear in person in Kansas City since the hearing would be evidentiary. Shortly before December 19, Carolyn Ennis objected to setting of the hearing in Kansas City instead of Springfield and also requested that she be permitted to appear by telephone from her home. A similar request to appear by telephone at the evidentiary hearing had been denied previously in a written order, both because parties and witnesses must be present in the courtroom for presentation of evidence and because telephonic conferences with Carolyn Ennis proved unsatisfactory and extremely diffi-

### III. THE HEARING

Counsel for Morris Friedell argued that the stay should be lifted because he had a secured claim in an amount in excess of the $107,488.33 on deposit in the probate estate, so the debtors had no equity in the money in the Iowa probate court and the debtors also could not demonstrate that the funds were necessary for an effective reorganization (or, in this case, Chapter 13 plan). Mr. Friedell also argued that if the Court found that Mr. Friedell had no lien on these funds, then the court must grant his alternative motion to dismiss case because if he had only an unsecured claim, then the debtors were disqualified from being Chapter 13 debtors because of the debt limitations of 11 U.S.C. § 109(e). On August 31, 1994, when this bankruptcy case was filed, § 109(e) provided that a debtor was eligible for Chapter 13 only if non-contingent, liquidated, unsecured debts were less than $100,000. Therefore, if the Court were to find that Mr. Friedell did not have a valid lien, the debtors would not be eligible for Chapter 13 because Mr. Friedell's debt alone exceeded $100,000.

At the hearing, the debtors wanted to relitigate whether the 1981 stipulation was valid and whether it was executed while Carolyn Ennis was disabled or whether it was possibly a forgery. Validity of the stipulation, forgery and incompetency at the time of execution were not raised in either of the two detailed answers filed on debtors' behalf by counsel Norman Rouse and by debtors pro se. Instead, the answers raised defenses such as the assertion that the debt was discharged in the Washington bankruptcy case, that the inheritance should be exempt and therefore could not be subject to Mr. Friedell's lien, and that Mr. Friedell could not be suffer irreparable harm from the stay because Mr. Friedell was allegedly going to give the inheritance funds to the parties' children and not use them himself.

Although the allegations concerning forgery or incompetency at the time of execution of the stipulation were made in opening statements, Carolyn Ennis never took the stand and testified on this point or any other issue. The only testimony presented by debtors was that of Michael Ennis, who read a prepared statement under oath. His testimony, relating to events concerning the marriage, divorce and stipulation between Morris and Carolyn Friedell (which events were in the 1970's and 1980's before he knew Carolyn Friedell), was excluded as hearsay because Michael Friedell did not possess personal knowledge of the events. The debtors did not present any evidence concerning equity or lack of equity in the funds, over and above Morris Friedell's claim, or any other automatic stay issue such any ability or willingness to provide adequate protection for use of the funds, or why the money was necessary for an effective reorganization (Chapter 13 plan in this instance) as required by § 362(d) (which also contemplates a showing that it is possible to file a confirmable plan).

### IV. DISCUSSION

#### A. Motion to Terminate Stay or in the Alternative to Dismiss

■ The court finds that Morris Friedell has established a non-contingent, liquidated claim of $125,641.91 as a result of the California state court judgment and the registration of the California judgement in Iowa. The court further finds that as a result of the registration of judgment and garnishment proceedings in Iowa, Mr. Friedell has a perfected lien under Iowa law on the $107,488.33

---

cult to monitor (see, for example, the transcript of the November 22, 1994 hearing). Reasons for setting the hearing in Kansas City included the following: debtor Michael Ennis was living in Kansas City and also needed to remain as close as possible to his employment in the Kansas City area, and at the hearing on November 22, 1994 he was agreeable to setting the final hearing in Kansas City; debtors' residence at Arcola, Missouri is approximately 55 miles from the court in Springfield and 140 miles from the court in Kansas City, so debtor Carolyn Ennis was locat-

ed at some distance from either courthouse and would have to travel regardless of the court site; attorneys for movant Morris Friedell would not consent to waive the statutory 30-day period in which the final hearing must be commenced after the initial hearing on November 22, 1994, so the hearing could not be continued to the next Springfield docket in January, 1995; and one of the Friedell attorneys, Mr. Tichenor, resides in Iowa and thus was located much closer to Kansas City than to Springfield.

which Carolyn Ennis would receive from her mother's estate in Iowa. Because the lien secures an indebtedness to him in the amount of $125,641.91 as of the date this Chapter 13 case was filed, he is an undersecured creditor.

▆ Having established that he is an undersecured creditor and that there is no equity in the property, Mr. Friedell has proven all that he required to prove and the burden shifts to the debtors on all other issues. 11 U.S.C. § 362(g). As noted, however, the debtors presented no admissible evidence regarding adequate protection for the creditor's lien on the money or whether the money was necessary for a reorganization (or whether it was possible to file a confirmable plan). Therefore, the stay must be terminated pursuant to § 362(d)(2) because a) the debtor has no equity in the property and b) presented no evidence on whether it was necessary for an effective reorganization or whether an effective reorganization is possible, and pursuant to § 362(d)(1) for cause, including the lack of adequate protection of the creditor's interest in the funds which debtors proposed to expend in their proposed plan.

▆ Even if Mr. Friedell's lien were not valid, this case would have to be dismissed on a jurisdictional basis. At the time this case was filed, 11 U.S.C. § 109(e) limited Chapter 13 to debtors whose non-contingent, liquidated, unsecured debts are less than $100,-000. If Morris Friedell's lien were invalid, he would still have an non-contingent, liquidated, unsecured claim of $125,641.91, which would also make him the primary unsecured creditor in the case. The amount owed to him as an unsecured creditor would prevent debtors from qualifying for Chapter 13.[4]

▆ As to the issue advanced by the debtors that the 1981 stipulation was not valid, either because it was not signed by Carolyn Friedell Ennis or because she was incompetent at the time, the Court finds that based upon principles of collateral estoppel, the Court should follow the final orders and judgments of the courts in California and Iowa and not relitigate those issues.

As noted above, Carolyn Ennis had notice of the original suit against her in California in 1987. She did not appear in court to contest it and a judgment was entered. Subsequently, she appealed it and that appeal has been dismissed. The elements necessary for collateral estoppel have been met and this court should not relitigate this issue. Under *Swapshire v. Baer*, 865 F.2d 948 (8th Cir. 1989), which cited *Oates v. Safeco Insurance Company of America*, 583 S.W.2d 713 (Mo. 1979), the elements for collateral estoppel are as follows: 1) the issue decided in a prior adjudication is identical to the issue presented in the later case; 2) the prior adjudication must have resulted in a judgment on the merits; 3) the parties against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior adjudication; 4) the parties against whom collateral estoppel is asserted must have a full and fair opportunity to litigate the issue in the prior suit.

In the present case, the elements are fulfilled as follows: First, the issue of the validity and construction of the 1981 stipulation for sale of the marital home and splitting of the proceeds was adjudicated in the California court. The California judgment is final and unappealable. Furthermore, the Washington bankruptcy court ruled the underlying debt on the stipulation was not discharged and the Iowa District Court has held the California judgment is valid and effective to support the registration of foreign judgment and subsequent garnishment in the Iowa District Court in Polk County, Iowa. Second, the prior adjudication resulted in a judgment on the merits. The fact that Carolyn Ennis chose to default and chose not to appear for trial does not prevent the California trial from constituting a judgment on the merits (see transcript of California trial admitted into evidence at the bankruptcy court hearing on December 19, 1994). Third, the parties, Morris Friedell and Carolyn Friedell Ennis, were the same in the California pro-

---

4. The Bankruptcy Reform Act of 1994 increased the limit on unsecured debt to $250,000 for cases filed after October 22, 1994.

ceeding and this bankruptcy court proceeding (as well as in the proceedings in courts in Iowa and Washington). Fourth, Carolyn Friedell Ennis has had a full and fair opportunity to litigate the issue in the prior suit. The fact that a party chooses to default does not mean there was not a full and fair opportunity to litigate the issue. The California judgment has since been considered by the following courts: the California appellate court which dismissed an appeal; the Washington bankruptcy court which denied the motion to reopen to add the Friedell debt and which ruled the debt was not discharged; the Iowa District Court which ruled against Carolyn Ennis on motions to challenge the registration of foreign judgment and to quash the garnishment. Carolyn Friedell Ennis has had a full and fair opportunity to litigate the issue in the original California proceeding and has since challenged the judgment in three other courts before coming to this bankruptcy court.

The debtors tried to reopen their Chapter 7 in Washington, but their motion was denied, with the Washington bankruptcy judge specifically holding that the debt to Mr. Friedell had not been discharged. That decision was not appealed and is now final. While this Court need not reach the issue, the authorities cited by debtors, *In re Beezley*, 994 F.2d 1433 (9th Cir.1993) and *In re Miller*, 159 B.R. 849 (Bkrtcy.E.D.Ark.1993), are not on point. *Beezley* and *Miller* involved situations where the Chapter 7 cases were no-asset cases where no bar date was noticed to creditors, and the debt which debtors sought to discharge after reopening would have been dischargeable in any event. In the present case, if the Washington bankruptcy court had reopened the case to permit addition of the Friedell claim in the scheduled debts, Morris Friedell could have filed an action to object to discharge of the debt pursuant to 11 U.S.C. § 523(a)(4) or (a)(6) for defalcation, embezzlement or larceny, or willful and malicious injury by conversion of the funds. In addition, it does not appear that the evidence at the hearing showed that the Chapter 7 case in Washington was a no-asset case with no bar date.

Debtors have litigated these issues in multiple proceedings in courts in California, Washington, Iowa and Missouri. Debtors have exhausted every avenue for contesting the lien on funds in custody of the probate executor in Iowa.

Finally, Carolyn Ennis has alleged that she is not competent and is therefore incapable of representing herself in this matter. Debtors also alleged that if Carolyn Friedell Ennis signed the stipulation in 1981, she was incompetent at that time so the stipulation is not valid. Because of the application of the principles of collateral estoppel discussed above in regard to the judgment on the stipulation and subsequent court proceedings in Washington and Iowa, it does not appear the court would be required to reach this issue. However, under the circumstances, the court will take up the issue.

There was no admissible evidence of incompetency or disability at any time, whether in 1981 when the stipulation was executed, or in 1994 when this Chapter 13 case was filed and these disputes have been taken up at hearings. Carolyn Ennis did not testify and did not offer any other admissible evidence of a disability. As noted earlier, the court declined at a hearing on November 22, 1994 to allow a person identified as Carolyn Ennis's doctor to testify by telephone. No other attempt was made to secure the testimony as a witness in court or at a deposition.

Based upon the Court's observations, Carolyn Ennis does not appear to be incompetent or disabled. She instead appears to be an angry and emotional person. The court has had the opportunity to observe Carolyn Ennis for approximately five hours during the hearing on December 19, 1994 and has also listened to her during previous teleconferences. Although she appeared upset and angry at times during the hearing on December 19, 1994, such emotions would not be unusual for a person in circumstances where proceedings involving the right to $107,488.33 are not going the way that party desires. Review of the record reveals that Carolyn Ennis was attuned to every detail at the hearing, such as, by way of example, questioning whether counsel for Morris Friedell had complied with all pre-trial directions in

the court's original order setting the hearing on the motion to terminate stay. There was no appearance of incompetency or disability. To the contrary, she appeared to be very competent, although it is not an easy task to proceed pro se. Many of the pleadings she has filed, the research she offered at the hearing, such as the *Beezley* and *Miller* cases, and the research that is attached to her brief in opposition to the motion to lift stay indicate that she is intelligent and competent and performs at a level of skill and knowledge above that of the typical pro se debtor. The court finds no indication during the hearing that she is or was incompetent, whether in applying her signature to any of these documents which she has chosen to file with the court since August, 1994 or in appearing in court on December 19, 1994 or at any of the previous hearings. In summary, an angry or emotional person is not necessarily a disabled or incompetent person.

### B. Debtors' Motion for Advance of Funds

 The issue of debtors' motion to obtain an advance of funds for the purpose of paying an attorney or other expenses is ready to rule now that the motion to terminate automatic stay has been ruled. Previously, including at the preliminary hearing on November 22, 1994, the court has advised debtors that a final order could not be entered on the motion to release funds to debtors until the creditor's motion to lift stay was ruled because the funds could not be distrib-

uted to and spent by debtors if the funds were subject to a valid lien of movant Morris Friedell.[5] In this order, the court has ruled that creditor Morris Friedell has a secured claim in the amount of $125,641.91 and has a valid, perfected lien on the $107,488.33 in the custody of probate executor Paul Ahlers. The creditor is undersecured and consumption of the funds or cash collateral by debtors would deprive the secured creditor of his security. Thus, debtors' motion for an advance or release of the funds must be denied.

As noted in footnote 5, the issue of retaining or appointing counsel has been a difficult issue in this case. Nevertheless, there is no provision to appoint or pay counsel for debtors who do not wish to proceed pro se and who cannot afford to pay counsel. As explained in *In re Fitzgerald*, 167 B.R. 689, 692 (Bkrtcy.N.D.Ga.1994):

> Debtor's statement that he is not able to afford counsel and that he has been unsuccessful in retaining counsel unfortunately applies to many Chapter 7 debtors. Similarly, debtor's statement that he has a limited knowledge of bankruptcy law also applies to many, if not most, debtors.... If financial inability to hire a lawyer and lack of expertise in bankruptcy law justified court-appointed counsel, a great many Chapter 7 debtors would qualify for *in forma pauperis* relief.

At a subsequent hearing or teleconference, the court advised debtor that counsel could not be appointed for debtors in bankruptcy cases. *See, e.g. United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (*in forma pauperis* statute, 28 U.S.C. § 1915(a), does not apply in bankruptcy and it is constitutional to require a debtor to pay the entire filing fee); *In re Perroton*, 958 F.2d 889 (9th Cir.1992) (bankruptcy courts are not courts of the United States and therefore cannot act under 28 U.S.C. § 1915); *In re Broady*, 96 B.R. 221, 222–23 (Bkrtcy.W.D.Mo.1988) (bankruptcy courts not courts of the United States under § 1915); *In re Fitzgerald*, 167 B.R. 689, 691 (Bkrtcy.N.D.Ga.1994) (no provision for appointment of counsel or payment of appointed counsel, and 28 U.S.C. § 1915(d) is probably inapplicable since § 1915(a) is inapplicable); *In re Gherman*, 105 B.R. 712, 713 (Bkrtcy.S.D.Fla. 1989) (citing *Kras* for proposition that Supreme Court has held that the 28 U.S.C. § 1915 is not applicable to bankruptcy proceedings).

---

5. The issue of counsel for debtor has been a difficult problem in this case. The court understands debtors' desire to be represented by counsel if possible, but the court cannot appoint counsel in a bankruptcy case or otherwise insure that every debtor will be able to proceed with counsel and not pro se. Before debtors' recent motion to advance funds in order to pay counsel, on October 5, 1994, debtor Carolyn Ennis filed a motion requesting the court to appoint counsel to represent her, as the district court might do in a criminal case. Debtor asserted that she had been unable to locate an attorney who would voluntarily represent her, so she wanted an attorney to be appointed. Debtor attached to the motion a list of 27 attorneys who had declined to represent her because 90% said they were too busy and the other 10% had reasons such as they were too busy or did not wish to travel to Springfield. At that time, debtor's primary assertion was that attorneys would not represent her due to the complexity of the case. Only a passing reference to payment was made in this motion.

## C. Hearing on Confirmation of Debtors' Plan

The last issue to be addressed in this order is the debtors' plan which was set for a hearing on confirmation on December 19, 1994. As a result of the ruling on the automatic stay, confirmation must be denied. As stated on the record at the conclusion of the hearing, debtors are directed to file an amended plan with 15 days after the hearing date. If an amended plan is not filed within 15 days after the hearing, the Chapter 13 Trustee's motion to dismiss, based on failure to obtain confirmation of a plan, will be granted.[6]

## V. CONCLUSION AND ORDER

After careful review of the evidence, arguments, the parties and witnesses, and the file (including post-hearing correspondence submitted by the parties), the court finds that creditor Morris Friedell has a valid, duly perfected, non-contingent, liquidated secured claim in the amount of $125,641.91 and that his claim is secured by a perfected lien on the funds in the custody of probate executor Paul Ahlers. The court further finds that creditor Friedell's motion to terminate stay to permit him to enforce his rights under state law should be granted and debtors' motion to receive an advance of the cash collateral to pay an attorney or other expenses should be denied. Due to granting of the motion to lift stay, confirmation of debtors' plan must also be denied and debtors are directed to file an amended plan within 15 days of the hearing date of December 19, 1994. If Morris Friedell's motion to terminate stay had been denied on the basis that he did not have a secured claim, he would still have an unsecured claim in the amount of $125,690.12 and therefore, the alternative motion to dismiss under 11 U.S.C. § 109(e) would be granted because the unsecured debt in excess of $100,000 would render debtors ineligible for Chapter 13 relief in this case filed August 31, 1994. Additional findings and conclusions stated on the record at the conclusion of trial are incorporated herein.

Accordingly, for the foregoing reasons, it is **ORDERED, ADJUDGED AND DECREED** as follows:

1. Morris Friedell has a non-contingent, liquidated, claim in the amount of $125,641.91 and the claim is secured by a valid security interest and duly perfected lien on the funds totalling $107,488.33 in the custody of probate executor Paul Ahlers and on deposit at Norwest Bank.

2. Morris Friedell's motion for relief from stay is granted and the automatic stay is hereby terminated so Morris Friedell may proceed to enforce his rights under state law in the funds currently in custody of probate executor Paul Ahlers and on deposit at Norwest Bank.

3. Confirmation of debtors' plan which was pending on December 19, 1994 is denied as a result of the order herein terminating the automatic stay as to Morris Friedell. Debtors are ordered to file an amended plan within 15 days after the hearing.

4. Debtors' motion to obtain an advance of the funds which are subject to the secured claim of Morris Friedell, for the purpose of paying counsel or paying other expenses, is denied.

---

**6.** By the time this written order is entered, the 15 day period for filing an amended plan will have passed, so if an amended plan is not on file, the Chapter 13 case could be dismissed, as directed on the record at the conclusion of trial on December 19, 1994. It has come to my attention that on January 5, 1995, debtor may have filed an amended plan, in the form of a document titled "K*A*N*G*A*R*O*O PAPERS (INCLUDES PLAN)." I have not had the opportunity to review the document to determine whether it is a plan, so I will reserve ruling at this time on dismissal.